THOMAS F. MAHER & others *vs.* COMMONWEALTH.

COMMONWEALTH *vs.* BOARD OF REFEREES.

Hampden. Suffolk. September 19, 1934. — June 27, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Supreme Judicial Court*, Jurisdiction. *Certiorari. Evidence*, Of value; Opinion: expert. *Damages*, For property taken or damaged under statutory authority.

The Supreme Judicial Court has jurisdiction under St. 1927, c. 321, § 5, to review rulings of law made by a board of referees appointed by the court to assess damages under that statute, though the court has not custody of the referees' report; and a petition for such review, not certiorari, is the proper process for the purpose.

Under a rule of procedure adopted by a board of referees acting under St. 1927, c. 321, § 5, that "legal rules of evidence shall apply to proceedings before" them, there was prejudicial error by the board while finding the value of country real estate conveyed to the Common-

wealth, (1) in admitting the owner's estimate of value based partly upon the opinions of others and upon the sentimental value of the property to him; and (2) in admitting an estimate of value by a city real estate expert dealing somewhat in country property, but with no knowledge of sales or values in the town in question nor in any town adjoining it.

A board of referees finding the value of certain real estate pursuant to St. 1927, c. 321, § 5, rightly allowed damages for improvements thereof made by the owner in good faith after he had learned of the enactment of that statute and had been notified that the property would be required for public uses, but before title thereto passed to the Commonwealth and his right to damages vested.

PETITION, filed in the Supreme Judicial Court for the county of Hampden on April 7, 1933, for appointment of a board of referees pursuant to St. 1927, c. 321, § 5. Following appointment of the board and the making of their report, the Commonwealth filed a petition for review under said § 5. Also a

PETITION for a writ of certiorari, filed in the Supreme Judicial Court for the county of Suffolk on April 4, 1934.

The petition for review and the petition for a writ of certiorari were ordered dismissed by *Pierce*, J. The Commonwealth alleged exceptions.

*D. E. Hall*, Special Assistant Attorney General, & *D. A. Foley*, Assistant Attorney General, for the Commonwealth.

*W. C. Giles*, for the petitioners Maher and others; and, by leave of court, submitted a brief as *amicus curiae*.

RUGG, C.J. These two cases are designed to raise in different forms of proceeding the same questions of law as to rulings made by a board of referees appointed by the Supreme Judicial Court pursuant to St. 1927, c. 321, § 5. That act makes additional provision for the water supply of the metropolitan district by the development of the Swift River. The provisions of that act here material are that an owner of land to be acquired for that public enterprise may file a sworn statement with the metropolitan district water supply commission, hereafter called the commission, setting forth the facts on which his claim for damages is based and the amount of such claim. Thereafter the Supreme Judicial Court, upon application by the commission or any other person in interest, may appoint

from time to time as the need may exist one or more boards of three referees for determination of the damages. The referees are required to establish their rules of procedure subject to the approval of the court. The referees, upon reference of any claim under § 5 of the act, shall after hearing "determine the amount of damages suffered and shall certify" their "findings to the commission; which findings shall be conclusive upon all parties except that any party in interest aggrieved by a ruling of the referees .on a question of law may object thereto and the supreme judicial court shall have power to review and modify any finding to the extent that it may be an error in that respect, but not otherwise."

For convenience the parties to these proceedings will be designated respectively the landowners, the referees and the Commonwealth. The landowners, having complied with the preliminary requisites, filed a petition for the appointment of a board of three referees and such referees were appointed. The referees adopted rules of procedure, one of which was to the effect that the "legal rules of evidence shall apply to proceedings before" them. The referees held hearings and made an extended report of findings, which was filed with the commission. During the hearings, subject to exception by the Commonwealth, evidence was received, requests for rulings were denied, and rulings made. Objections by the Commonwealth were filed to the report of the referees.

The Commonwealth seeks the correction of the alleged errors of law in the action of the referees in alternative petitions, one for review and the other for a writ of certiorari. The general rule is that the function of a writ of certiorari is to correct substantial errors of law committed by a judicial or *quasi* judicial tribunal which are not otherwise reviewable by a court. *Whitney* v. *Judge of the District Court*, 271 Mass. 448, 459. Provision is made by § 5 of this act whereby the court has "power to review and modify any finding" of referees to the extent that it is erroneous in respect to rulings of law to which objection has been made. This is the remedy set forth in the statute for

the correction of errors of law made by the referees. The power to review thus conferred upon the court is not the technical writ of review of G. L. (Ter. Ed.) c. 250, §§ 21–36, and described at length in *Lynn Gas & Electric Co.* v. *Creditors National Clearing House*, 235 Mass. 114. This review is the more flexible power described in many statutes where supervision to correct errors has been conferred upon courts in a considerable variety of instances. *Ott* v. *Board of Registration in Medicine*, 276 Mass. 566, 569–571, and cases there examined. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542. *Harper* v. *Board of Appeal of Boston*, 271 Mass. 482. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273, 277. *Mayor of Medford* v. *Judge of the District Court*, 249 Mass. 465, 471. The referees in the present controversy were appointed by the court. Their duties were judicial in nature. While their report was filed with the commission and not returned into court, a measure of control for the correction of material errors of law is recognized as inhering in the court by which they are appointed. *Brackett* v. *Commonwealth*, 223 Mass. 119. *Selectmen of Danvers* v. *Commonwealth*, 184 Mass. 502. It follows that the issues raised must be considered on the petition for review and not on the petition for a writ of certiorari.

Although no question has been raised as to the jurisdiction of the court, it must be determined. The governing statute is unusual in that it requires the court to appoint the referees but directs their report to be filed with the commission. That is a State board charged with extensive powers of eminent domain and the payment of all damages arising from the exercise of that right. Full measure of judicial review of material errors of law is preserved in cases where appropriate steps are taken to that end. *Kingman, petitioner*, 153 Mass. 566. *Mayor & Aldermen of Springfield, petitioners*, 234 Mass. 578. *Opinion of the Justices*, 234 Mass. 612. *Weymouth, petitioner*, 251 Mass. 359, 361. *Boston* v. *Chelsea*, 212 Mass. 127, 130.

According to the report of the referees the property of the landowners consisted of one hundred sixty-two and

eight tenths acres of land in Greenwich. In the purchase and development of the property about $80,000 was expended by the landowners. The award of damages for the value of land made by the referees as of September 15, 1933, (the date on which the sworn copy of the sworn statement by the landowners was filed with the referees,) was $221,000. On this property is a clubhouse, which is an old farm house attractively remodeled with opportunities for overnight guests and meals, and with the usual equipment of a country club. There is also a separate smaller clubhouse constructed of cobblestones. There is on the property a nine-hole golf course and sufficient land for enlarging to an eighteen-hole golf course. The putting greens are exceptionally good and the fairways are constructed on excellent ground for drainage. On the golf course is an unfailing supply of water so abundant that it could be used for the fairways as well as for the putting greens. There are some pine groves on the land and about fourteen hundred eighty feet of shore line on a pond, fifty-nine acres in area, suitable for boating and fishing. There are also a bathing beach, one lake cottage, and room for the erection of other cottages. The property is situated "in a most beautiful district, with views of surrounding hills which are most attractive." It is near the State highway leading from Springfield and Holyoke to towns on the northern border of the Commonwealth and is distant about thirty miles from the former and about twenty miles from the latter city. The property has been used as a country club and for the entertaining of the social and business guests of the landowners. They had also sold golf-playing privileges day by day. The property is available for use as a country club, golf club, boys' or girls' camps, or for summer cottages.

One of the landowners testified in substance that the value of his property was $400,000. On cross-examination he testified that that value was based in part, not upon his views as owner but upon what some real estate experts had told him; that he had not formed any opinion as to the fair market value of the property before he had talked it over with real estate experts, and that after such consulta-

tion he formulated his opinion as to the value of the property, and that he had raised his opinion of the value of the property by approximately $50,000. Counsel for the Commonwealth moved that this testimony as to value be stricken out, and excepted to the denial of that motion. The same witness testified that to some extent his valuation of $400,000 unquestionably involved in a relatively small amount a peculiar and sentimental value to him and to his partner. Again counsel for the Commonwealth moved that his testimony be stricken out because not founded on a proper legal basis. It does not appear that this landowner possessed any special qualifications to express an opinion as an expert on the value of the land except that he was a part owner. The rule permitting a landowner to testify as to the value of his land in reason rests upon the fact that commonly he is familiar with its characteristics and its availability for actual and potential valuable uses. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 503–505, and cases there examined. The testimony of the landowner in the case at bar did not purport to rest on that foundation but rested in substantial respects upon the opinions of others. That was not a proper basis upon which a witness may express an opinion as to value. *Fairbanks* v. *Fitchburg,* 110 Mass. 224. This witness also gave weight to the element of sentimental value. That is a factor which ought not to be considered by a witness in expressing an opinion as to market value of land taken by eminent domain. That value means the price that can be obtained under fair conditions as between a willing buyer and a willing seller when neither is acting under necessity, compulsion, or peculiar and special circumstances. Sentiment of the individual owner has no place in estimating such value. *Lawrence* v. *Boston,* 119 Mass. 126, 128, 129, 132. *Providence & Worcester Railroad* v. *Worcester,* 155 Mass. 35, 39, 42. *Smith* v. *Commonwealth,* 210 Mass. 259, 261. *Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372, 382–383, and cases cited. *Davenport* v. *County of Franklin,* 277 Mass. 89, 93. We think that the testimony as to value given by this witness was based

upon erroneous foundations and ought to have been excluded. *Greenspan* v. *County of Norfolk,* 264 Mass. 9.

The landowners called as a witness one Boyle. He testified that he had been in the real estate business in Springfield for nearly twenty years, was president of the real estate board, had bought and sold many house lots, had testified as real estate expert in court, and had made appraisals for fifteen years and had developed several pieces of property having lake frontage, the nearest of which to the property in question were in Brookfield, twelve or thirteen miles away, and others in different towns, as matter of common knowledge located at a greater distance away; that he had never bought or sold any property in Greenwich, nor in Enfield, the next town south, nor in Dana, the next town north of Greenwich; and that he had not known of any sales of property in Greenwich. On these qualifications the referees allowed him to testify, subject to the exception of the Commonwealth, that the property was in his opinion worth $360,000. Much is left to the discretion of a trial judge in determining whether a witness is qualified to testify as an expert. We think the same rule applies to these referees in view of all the provisions of the statute under which they were appointed and were acting. But there are limitations to the exercise of that discretion. A witness who is destitute of the necessary qualifications ought not to be allowed to testify as an expert. With respect to the town where the property in question was located, or to the two adjoining towns in the Swift River valley or that locality, this witness had no knowledge of sales and had not made appraisals or familiarized himself in other ways with real estate values. The only sale of land in Greenwich which had come to his attention was one not rightly to be heeded, *Wright* v. *Commonwealth,* 286 Mass. 371, and not actually considered by him. The testimony of this witness ought to have been excluded. This branch of the case is governed by *Benton* v. *Brookline,* 151 Mass. 250, 252, 253, 266; *Haven* v. *County Commissioners,* 155 Mass. 467, 472. See also *Manning* v. *Lowell,* 173 Mass. 100, 102; *Klous* v. *Commonwealth,* 188 Mass. 149, 152; *Sargent* v.

*Merrimac*, 196 Mass. 171, 175; *Young* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 567, 573. The case at bar is distinguishable from *James Millar Co.* v. *Commonwealth*, 251 Mass. 457, 464, and *Cochrane* v. *Commonwealth*, 175 Mass. 299.

Further findings of the referees are these: The landowners were active and intelligent business men. They bought the land in question in 1924, having at that time no idea that waters of the Swift River and land in its valley would be taken for a water supply. They knew of the enactment of St. 1926, c. 375, conferring on the commission power to buy or to take land in the Swift River valley. They knew, also, of the enactment of St. 1927, c. 321. That was an emergency measure and took effect on its approval on April 26, 1927. In the summer of 1927 the landowners decided to construct a golf course on their land. They knew that the Swift River project for water supply was final as far as concerned legislative action, but felt that its ultimate construction was subject to repeal, to regulations by the United States as to the use of water, to strong opposition by the State of Connecticut (*Connecticut* v. *Massachusetts*, 282 U. S. 660), and to adverse sentiment among the inhabitants of the section affected. None of the major improvements made on the land were begun before the landowners knew that their property might be required by the commission for the Swift River project. Express notice was sent to them on September 21, 1928, by the commission that their land would be required for public uses and that, if the construction of unusual or permanent improvements was contemplated, no compensation therefor would be paid by the Commonwealth. At the conclusion of the evidence the Commonwealth requested rulings to the effect that the landowners were not entitled to recover for any enhancement in the value of their property due to improvements made on it (1) after May 1, 1927, which was five days after the effective date of St. 1927, c. 321, or (2) after September 22, 1928, the day after the notice from the commission. These requested rulings were denied. Objections were filed by the Commonwealth to the denial of these

requests and to the assessment of the damages of the land-
owners on the basis of enhancement of the value of the land
due to improvements so made.

The governing statute makes provision in § 4 for the
taking of land such as that of the landowners by eminent
domain in fee by the commission, and for assessment of
damages caused by such taking, in the main in accordance
with G. L. (Ter. Ed.) c. 79, the right to damages to vest on
the recording of the taking in the registry of deeds. By
§§ 5 and 6, a landowner such as those here concerned, at his
option after November 1, 1928, and before a time not yet
reached, may file with the commission a sworn statement of
the location, nature and extent of his land and such further
information as the commission may require. The commis-
sion then is required to search the title of such landowner and
to give him notice of defects, if any, in his title. As soon
thereafter as the owner delivers to the commission a deed
and all other instruments necessary to convey to the Com-
monwealth a merchantable title to the land and files with
the referees a sworn copy of the sworn statement already
filed with the commission, he has a claim for damages for
the value of his land, to be determined by referees. Thus
it appears that the commission was clothed with power to
take the land of these landowners on May 1, 1927, and at
any time thereafter, but that no such taking has been made.
The landowners exercised the privilege conferred upon them
by the statute of vesting title to this land in the Common-
wealth on September 15, 1933. There is no express provision
in the statute touching the valuation of improvements made
by landowners prior to the vesting of title to their land in the
Commonwealth. Until divested of their title, either by a
taking by the commission under eminent domain, or by
delivery by them of a deed to the Commonwealth and tak-
ing the other steps above described, the landowners possessed
all the attributes of ownership in fee of their land. In mak-
ing changes and improvements on their land, they were
simply exercising their rights as proprietors.

It has been held that a statute enacted to prevent the
assessment of damages to include improvements made upon

land subsequently to a projected, but before an actual, taking under eminent domain was unconstitutional. *Edwards* v. *Bruorton*, 184 Mass. 529, 532, 533. The principle on which this decision rests is decisive against the contention of the Commonwealth on this point. *Joly* v. *Salem*, 276 Mass. 297, 306. This principle is widely recognized. *Sherwood* v. *St. Paul & Chicago Railway*, 21 Minn. 122, 126. *Forster* v. *Scott*, 136 N. Y. 577. *Kittinger* v. *Rossman*, 12 Del. Ch. 276, 286. *State* v. *Carragan*, 7 Vroom, 52. Compare *Junius Construction Corp.* v. *Cohen*, 257 N. Y. 393, 399, and *Suncrest Lumber Co.* v. *North Carolina Park Commission*, 30 Fed. Rep. (2d) 121, 128. See, however, *Lloyd* v. *Fair Haven*, 67 Vt. 167. There is no finding and no rulings of law were requested respecting bad faith on the part of the landowners in making the improvements. Therefore, cases like *In re New York*, 196 N. Y. 255, and *Champlain Stone & Sand Co.* v. *State*, 142 App. Div. (N. Y.) 94, are not applicable. The rulings of the referees on this subject were not erroneous in law.

The result is that the objections and exceptions of the Commonwealth as to evidence must be sustained and as to other matters overruled.

There is on this record no way of determining the extent to which the finding of the referees is vitiated by the errors as to evidence; but those errors are too extensive and important to be disregarded. *Haven* v. *County Commissioners of Essex*, 155 Mass. 467. Therefore, in the petition for review the exceptions are sustained and the finding of the referees must be set aside. Future proceedings, if not agreed upon by the parties, may be subject to the direction of a single justice. In the petition for a writ of certiorari, the exceptions are overruled and the petition is dismissed.

*So ordered.*