BOSTON AND ALBANY RAILROAD COMPANY & another *vs.*
COMMONWEALTH.

Suffolk.   December 7, 1936. — January 25, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Metropolitan District Water Supply Commission. Commonwealth. Contract,* Validity. *Practice, Civil,* Petition against Commonwealth.

An agreement entered into between the owners of a railroad in the Swift River valley and the metropolitan district water supply commission on behalf of the Commonwealth for the abandonment of the railroad property and its purchase by the Commonwealth and for a release of damages by the owners was within the authority conferred upon the commission by Sts. 1926, c. 275; 1927, c. 321, and did not require the approval of the Governor and Council as a prerequisite to its validity.

By the adoption by the Governor and Council of resolutions authorizing bond issues from time to time to meet anticipated expenditures for undertakings by the metropolitan district water supply commission in the Swift River valley under Sts. 1926, c. 275; 1927, c. 321, there was compliance with the provisions of § 27 of said c. 321 requiring approval by the Governor and Council from time to time of expenditures by the commission.

Exceptions, saved at the hearing of a petition against the Commonwealth under G. L. (Ter. Ed.) c. 258 to recover damages for alleged breach of contract, are determined in accordance with principles of law applicable to procedure in an action at law.

PETITION, filed in the Superior Court on August 15, 1935.

The petition was heard by *Hanify,* J., without a jury. There was a finding for the petitioners in the sum of $611,895.83. The Commonwealth alleged exceptions.

*R. H. Favreau,* Assistant Attorney General, for the Commonwealth.

*W. L. Parsons,* (*G. H. Fernald, Jr.,* with him,) for the petitioners.

PIERCE, J. This is a petition brought against the Commonwealth of Massachusetts under G. L. (Ter. Ed.) c. 258, to recover damages for an alleged breach on the part of the Commonwealth of a written contract. The case was heard in the Superior Court by a judge sitting without a jury upon the petition, the answer, a statement of agreed facts and arguments of counsel.

The petitioners seek to recover the amount — $575,000 and interest — payable to them under the provisions of a written agreement and a deed given by them to the respondent in accordance with that agreement. The agreement, which is set out in full in the record, was dated June 27, 1934. It was entered into by the petitioners and by the metropolitan district water supply commission, which purported to act for the Commonwealth under the authority of St. 1926, c. 375 (whereby the commission was established) and the authority of St. 1927, c. 321. Briefly stated, the agreement provided that the petitioners would discontinue and abandon their railroad running through the Swift River valley, and give the Commonwealth a deed of so much of their land as was required in connection with the creation of the storage reservoir for the metropolitan water district under St. 1927, c. 321, together with a release of damages arising from the discontinuance of the railroad and the creation of the reservoir, in consideration of the above mentioned sum to be paid by the Commonwealth.

The respondent denies that the said commission had authority to make or enter into any such contract or agreement with the petitioners as is set forth in their petition; and alleges that said commission did not, by any act which it performed in making such contract or agreement or in accepting any release or deed, as mentioned in the petition, bind the respondent in any way or manner whatsoever, and that the acts of said commission, as set forth in

the petition, are entirely void and of no effect to bind the respondent or to make it liable in any manner to the petitioners.

The agreed facts are in substance as follows: The railroad referred to in the agreement was owned by the Boston and Albany Railroad Company and was leased to and operated by The New York Central Railroad Company as a part of its system of railroads; it constituted a major part of the "Athol Branch," so called, extending from Springfield to Athol, traversing the area required for the storage reservoir. The agreement recited that the northerly portion of the railroad extended through the valley of the river mainly within the area which would be flooded by the reservoir; that about seventeen continuous miles of the railroad would be submerged; and that the parties desired to make a final settlement in full for all matters in connection with the discontinuance of the railroad. The agreement provided that the portion of the railroad between the village of Bondsville in the town of Belchertown and Athol, about twenty-nine miles in length, be discontinued and that about twenty and forty-three hundredths miles thereof, with the buildings thereon, lying in the valley and mainly within the area to be submerged, be conveyed to the Commonwealth by deed of the petitioners, and that in consideration for the deed and a release of all damages the Commonwealth would pay the petitioners the amount which they now seek to recover. The abandonment of the railroad required the approval of the interstate commerce commission (24 U. S. Sts. at Large, 379, as amended by 41 U. S. Sts. at Large, 477, § 402), and the abandonment of stations and train service required the approval of the State department of public utilities (G. L. [Ter. Ed.] c. 160, § 128). These approvals were obtained by the petitioners. The petitioners ceased operating trains over the railroad and removed the rails, ties and bridges; the telegraph poles and wires along the railroad were removed; and the petitioners executed and delivered to the commission a deed conveying to the Commonwealth the railroad land and buildings and releasing the Commonwealth from damages,

all in accordance with the agreement. The consideration was stated in the deed to be $575,000.

The deed was accepted by the commission, purporting to act for the Commonwealth, and on March 28, 1935, was recorded by it in the Worcester district registry of deeds and subsequently in the registries of deeds in the other districts in which the land conveyed was situated. After the deed was recorded, the Commonwealth on July 30, 1935, entered upon and took possession of the land conveyed to it by the petitioners, and is constructing thereon the main dam for the storage reservoir, carrying on the construction work continuously. For this work the respondent had paid to contractors about $1,000,000 up to the time the statement of agreed facts was filed, and the railroad land had been filled to a depth of about twenty-five feet for a distance of about nine hundred feet along the line of the abandoned railroad, and a portion of the concrete core of the dam had been built thereon. The petitioners have done all things required of them to be done under the agreement. A voucher for the payment to the petitioners of $575,000, the amount named in the agreement and in the deed, was approved by the commission and forwarded to the State comptroller; the comptroller issued his certificate therefor and transmitted it to the Governor and Council on June 12, 1935. The Governor and Council thereafter considered the matter, but have taken no action on the certificate except to place it on file. The State treasurer has in his hands sufficient funds which have been duly appropriated and raised for the purpose of carrying out the provisions of the statutes in question, including the payment of the amount sued for. Moreover, there has been a balance of these funds available for payment to the petitioners in excess of the amount required on all material dates, viz.: June 27, 1934, the date of the agreement; July 23, 1934, the date the agreement was delivered; March 28, 1935, the date the deed was delivered and recorded; August 15, 1935, the date this petition was filed.

At the close of the arguments, the presiding judge made a finding for the petitioners and assessed damages in the

sum of $575,000 with interest from March 28, 1935, the day on which the principal sum became due and payable. The case is before this court on the exceptions of the respondent to this finding.

The respondent contends "that the finding of the judge in favor of the petitioners was not correct as a matter of law, and that therefore its exception should be sustained." In support of its exception it submits that the contract, which was entered into between the petitioners and the metropolitan district water supply commission, is not binding upon the Commonwealth, because the same was never approved by the Governor and Council, nor has the expenditure of the sum mentioned in the contract been so approved.

This proceeding, in form a petition, is in substance an action of contract and not a suit in equity. It follows that this court does not review or revise the decision. We determine only whether it can be supported in law, or whether as a matter of law it must be reversed. *Andrews* v. *Registrars of Voters of Easton*, 246 Mass. 572, 576, and cases cited. The general finding in favor of the petitioners "will stand provided it can be supported on any reasonable view of the evidence with all rational inferences of which it is susceptible." *Ashapa* v. *Reed*, 280 Mass. 514, 516. *Marlborough* v. *Lynn*, 275 Mass. 394, 398. *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, 213. The exception to the finding presents for decision only the question whether as a matter of law the finding was permissible. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166.

The metropolitan district water supply commission was established by St. 1926, c. 375, for the purpose of securing an additional water supply for the metropolitan water system and various municipalities, by diverting into the Wachusett reservoir the flood waters of the Ware River. Under this statute the commission was authorized to enter into contracts, to secure engineering services, to appropriate land and water rights by eminent domain, and to construct public works, but it was specifically provided in § 8 of said c. 375 that its expenditures must be approved by

the Governor and Council. The applicable parts of said § 8 read as follows: "For the purpose of carrying out the provisions of this act, the commission may expend such amounts, not exceeding in the aggregate fifteen million dollars, including the sum required to be paid by the city of Worcester under section twelve, as may, from time to time, be approved by the governor and council. To meet such expenditures, the state treasurer shall, from time to time, on the request of the commission and subject to such approval, issue bonds of the commonwealth to an amount not exceeding the sum of fourteen million dollars." In St. 1927, c. 321, additional provisions were made for further development of a water supply from the Swift River for the same purposes, and powers and duties were granted similar to those conferred upon the commission by St. 1926, c. 375. By § 3 of said c. 375 the commission was given power to take by purchase or otherwise "such lands . . . and other property in the watershed of the Swift river as it may deem necessary or desirable in preparation for the development of this river as a potential water supply for future use." Section 1 of St. 1927, c. 321 directs the commission to construct a dam in the Swift River for the purpose of creating a storage reservoir in the Swift River valley; § 4 provides in part: "For any of the purposes of this act, or for the further protection of the purity of the waters to be diverted under this act, or for the purpose of providing for a future increase in the capacity of the Swift river reservoir, the commission on behalf of the commonwealth may at any time and from time to time, take by eminent domain or acquire by purchase or otherwise, such lands, waters, water rights, easements and other property or interests in property, including any cemetery, as it may deem necessary or desirable"; and that "The commission shall take or otherwise acquire in fee all lands which will be submerged by the construction of dams and reservoirs under this act"; § 7 reads: "The commission may either before a taking or afterward make such settlements as it may deem for the best interests of the commonwealth with any person or corporation having a valid

claim under this act"; and § 11 reads in part: "in general [the commission] may do any other act or thing necessary or proper for carrying out the powers and duties conferred upon it by this act."*

This commission is referred to in *Maher* v. *Commonwealth*, 291 Mass. 343, 346, 350, as a "State board charged with extensive powers of eminent domain and the payment of all damages arising from the exercise of that right," and possessed of "power to buy or take land in the Swift River valley." The power to buy by implication imports authority to make an agreement as to the terms of purchase, with reasonable provisions incidental thereto. *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 541. *Cotting* v. *Commonwealth*, 205 Mass. 523, 526. *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 31. St. 1927, c. 321, § 10, provides: "The commission may alter, relocate or discontinue the whole or any parts of any rights of way belonging to any railroad corporation . . . or the railroad . . . . may in whole or in part be discontinued or abandoned as and in such manner as shall be mutually agreed upon by the commission and the board of directors of the railroad corporation . . . subject to such approval as is required by law of any state or federal authorities." It is to be here noted that the Athol branch of the petitioners' railroads was the only railroad within the valley and watershed of the Swift River affected by the construction of the reservoir, and the only railroad to which the language of the quoted section could refer. The mutual agreement deals merely with the discontinuance of the railroad and matters incidental thereto, including provision for conveyance to the Commonwealth of land which the commission was not only authorized to acquire but, under § 4, was directed to acquire in fee, and provision for the com-

---

* Section 27 of St. 1927, c. 321, was in part as follows: "For the purpose of carrying out the provisions of this act, the commission may expend such amounts not exceeding in the aggregate fifty million dollars, as may from time to time be approved by the governor and council. To meet such expenditures, the state treasurer shall, from time to time, on the request of the commission and subject to such approval, issue bonds of the commonwealth to an amount not exceeding the sum of fifty million dollars . . . . " — REPORTER.

pensation to be paid the petitioners for the loss of their railroad and resulting damages. It is to be further noted that the approvals "required by law of any state or federal authorities" were obtained by the petitioners; that the abandonment of the railroad required the approval of the interstate commerce commission (24 U. S. Sts. at Large, 379, as amended by 41 U. S. Sts. at Large, 477, § 402); and that the abandonment of the stations and train service required the approval of the State department of public utilities (G. L. [Ter. Ed.] c. 160, § 128).

On the above facts the respondent contends that the petitioners cannot recover because the contract was never approved by the Governor and Council; and further, that, although the petitioners performed the matters required of them under the contract and sought recovery of the sum named therein, they cannot recover because the payment to them of such sum was never approved by the Governor and Council. In reply to these positions of the respondent the petitioners assert that there is no statutory provision requiring that an agreement of this character be approved by the Governor and Council — more specifically, that St. 1926, c. 375, and St. 1927, c. 321, contain no provision requiring such approval. The respondent contends that the general authority conferred upon the metropolitan district water supply commission by St. 1926, c. 375, and St. 1927, c. 321, to take necessary land and water rights and to enter into contracts for the purpose of performing the work therein provided for, was subject to the limitation that the expenditures thereby to be incurred must be approved by the Governor and Council. The respondent rests its contention upon the provisions of St. 1926, c. 375, § 8, which authorized the commission to expend $15,000,000, subject to the approval of the Governor and Council, and upon St. 1927, c. 321, § 27, which authorized the commission to expend $50,000,000, subject to the approval of the Governor and Council.

The statutes quoted do not expressly require the specific approval of every contract or of every expenditure the commission was authorized to make. St. 1927, c. 321, § 10,

provides that an agreement relating to the discontinuance and abandonment of the railroad should be approved by Federal authority (interstate commerce commission) and State authority (department of public utilities). If any other approval were intended to be required, obviously it would have been stated. It is a "familiar principle of interpretation that express mention of one matter excludes by implication other similar matters not mentioned." *McArthur Brothers Co.* v. *Commonwealth*, 197 Mass. 137, 139. St. 1927, c. 321, § 4, gives authority to the commission to make settlement with any person damaged by injury to his water rights, and to make contracts with respect to the amount of flow down the stream, or to agree to furnish a substitute for the water rights taken; and it is expressly stated therein that "the commission may, subject to the approval of the governor and council, make a contract . . . ." This express requirement of approval by the Governor and Council of contracts of an unusual character, tends to show that no such approval was meant with respect to other agreements, authorized by the statute, where the language of the permission to act is silent on the subject. *International Paper Co.* v. *Commonwealth*, 232 Mass. 7, 10. *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 75. The "intention of the lawmaker is to be deduced from a view of every material part of the statute . . . ." *Hellmich* v. *Hellman*, 276 U. S. 233, 237.

The respondent contends that supervisory power of approval, resident in the Governor and Council, is not an interference with the powers conferred upon the commission in making necessary contracts and in the adjustment and settlement of land damages, *Goddard* v. *Lowell*, 179 Mass. 496, but is a provision for the regulation of the methods which must be adopted and pursued to create a valid financial obligation against the Commonwealth. *United States Drainage & Irrigation Co.* v. *Medford*, 225 Mass. 467, 472. Citing *Fiske* v. *Worcester*, 219 Mass. 428, to the effect that the right to approve is not the right to contract, the respondent further contends that, while the commission is free to initiate contracts for construction and for the settlement

of damages, such contracts and settlements, by the terms of the act, are subject to the limitation that the amount sufficient for the payment of the indebtedness which would thereby be incurred must be approved by the Governor and Council, for under the phraseology of § 8 of St. 1926, c. 375, and under § 27 of St. 1927, c. 321, not only the raising of the necessary funds but also their expenditure must have such approval.

The reply of the petitioners to this contention, that a contract calling for the expenditure of a substantial sum of money must have the approval of the Governor and Council before it can be binding on the Commonwealth, is that the language of said § 27 in general makes no distinction between large and small items; that it makes no distinction between payments for damages for land taken by eminent domain and payments for land purchased; and that there would be no sound basis for doing so. *Saltonstall* v. *New York Central Railroad,* 237 Mass. 391, 394. The reply further points out that if the particular expenditure called for in the instant agreement requires specific approval by the Governor and Council, then the expenditures of money involved in every contract and every undertaking of the commission must go to the Governor and Council for approval before the commission can act; and that without such approval the commission is powerless to incur any obligation, however insignificant, or to make any purchase, however trifling; that such a construction of § 27 would mean delay in carrying out the purposes of the statutes; and that it would be inconsistent with the action of the Legislature in declaring both to be emergency laws, in authorizing the commission to adopt emergency methods (St. 1926, c. 375, § 1) and in directing it to proceed "forthwith" (St. 1927, c. 321, § 1). The petitioners further contend that the position of the respondent, if followed, would make the commission a mere advisory board with authority only to suggest to the Governor and Council what ought to be done, and that such interpretation of § 27 would render practically nugatory the broad language in numerous other sections of the statutes obviously intended to give the commissioners

the "extensive powers" which they need and which this court has already said they actually possess. *Maher* v. *Commonwealth*, 291 Mass. 343, 346.

Other sections than § 27 of St. 1927, c. 321, affirmatively show that it was not the intention of the Legislature to require the approval by the Governor and Council of particular expenditures. See in this connection St. 1926, c. 375, §§ 8, 9. It is conceded that there was an adequate appropriation by the General Court; that the bonds were issued under § 27; and that funds have been and are available in sums sufficient to pay the petitioners. Presumptively the petitioners are entitled to be paid from these funds. *James Millar Co.* v. *Commonwealth*, 251 Mass. 457. The respondent concedes that the petitioners are entitled to damages, in some form of action, for the value of the property which has been appropriated by the Commonwealth; but contends that they are not entitled to recover in this proceeding upon their written contract for a sum certain — the sum not having received the formal approval of the Governor and Council. Without further discussion, we are of opinion that the metropolitan district water supply commission was authorized by St. 1926, c. 375, and St. 1927, c. 321, in behalf of the Commonwealth, to enter into the agreement with the petitioners and to purchase the land conveyed by the petitioners to the Commonwealth; that the agreement did not require the approval of the Governor and Council as a prerequisite to its validity; that the provisions of St. 1927, c. 321, § 27, appropriating funds and limiting expenditures to such amounts in the aggregate as the Governor and Council might approve, were complied with; and that such approval appears from the resolutions authorizing the bond issues.*

*Exceptions overruled.*

---

* The statement in the agreed facts respecting these bonds was as follows: "The allegations contained in paragraph 5 of the petition are true. [Among such was an allegation that 'the State treasurer has in his hands sufficient funds which have been duly appropriated by and raised under the authority of the said Acts for the purpose of carrying out the provisions thereof including the payment of the amount required by the aforesaid agreement . . .'] The total of the bonds of the Commonwealth issued under St. 1927, c. 321, and under St. 1926, c. 375, now amount to $34,250,000. The first issue was

---

in 1927 and there have been one or more issues, as required to meet anticipated expenditures, each subsequent year. The bonds issued next prior to June 27, 1934, the date of the agreement with the petitioners, were issued following a resolution of the governor and council under date of January 24, 1934, a copy of which is attached hereto . . . Since that date there have been two issues under the act of 1927: one in the sum of $2,500,000. following a resolution of the governor and council under date of January 30, 1935, and the other in the sum of $3,500,000. following a resolution of the governor and council under date of September 9, 1935. In each instance when bonds were issued under these acts, the bonds were issued and sold by the State treasurer following a resolution in the same form as the resolution of January 24, 1934, and in accordance with a practice whereby from time to time the metropolitan district water supply commission requested the State treasurer to issue bonds to meet proposed expenditures for the purposes of the acts, and the State treasurer, after obtaining the resolution from the governor and council, issued and sold the bonds, vouchers covering all payments under the acts from the proceeds of said bonds being approved for payment by the commission and forwarded to the State comptroller who certified the same to the governor and council, the governor issuing his warrant therefor, with the advice and consent of the council, to the State treasurer, in accordance with the requirements of the General Laws." — Reporter.