CITY OF CAMBRIDGE *vs.* TOWN OF WEST SPRINGFIELD.

SAME *vs.* COMMONWEALTH.

Middlesex.    April 3, 1939. — April 13, 1939.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Settlement.    Residence.    Evidence,* Of place of residence, Competency *Words,* "Actually resided."

The words "actually resided" in G. L. (Ter. Ed.) c. 116, § 1, Fifth, mean a residence of the enlisted man, determined truly to exist upon consideration of the purpose for which he went to the particular locality, his intention as to the length of his stay there and contingencies governing his leaving.

In an action under G. L. (Ter. Ed.) c. 117, § 14, evidence of assessment of a poll tax upon the alleged needy person by the defendant and its payment was inadmissible.

Evidence upon the issue, whether an alleged needy person, who at the time of his enlistment in the army in 1917 was a railroad brakeman, then "actually resided" at lodgings in a town in this Commonwealth within G. L. (Ter. Ed.) c. 116, § 1, Fifth, or at some place outside the Commonwealth, warranted a finding of actual residence outside the Commonwealth.

CONTRACT.    Writ in the Superior Court dated January 27, 1938; also a

PETITION, filed in the Superior Court on April 27, 1938.

By order of court, the two cases were consolidated to be heard together.    Both related to sums paid by the city of

Cambridge for the support of William Sweeney and family from July 6, 1932, to January 13, 1938. They were heard by *M. Morton*, J., who found for the defendant town and against the Commonwealth in the sum of $3,755.93.

*D. J. Doherty*, Assistant Attorney General, for the Commonwealth.

*W. Reid*, Town Counsel, for town of West Springfield.

*J. A. DeGuglielmo*, Assistant City Solicitor, & *G. P. Lordan*, for the city of Cambridge, submitted a brief.

RONAN, J. The first case is an action of contract, in accordance with G. L. (Ter. Ed.) c. 117, § 14, to recover for money, food and fuel furnished to one Sweeney and his family, who became in need of assistance and relief while they were living in the plaintiff city. Liability is based upon the ground that Sweeney had a legal settlement in the defendant town. The petition in the second case seeks to recover from the Commonwealth for the same items for the reason, as alleged, that Sweeney had no settlement within the Commonwealth. The cases were submitted to the Superior Court upon an agreed statement of facts, submitted as evidence and not upon a case stated. The statement contained considerable documentary evidence. The parties concede that the amount claimed was fair and reasonable and that the city of Cambridge had complied with all the pertinent statutory provisions. The only issue presented for the determination of the judge was whether Sweeney at the time he enlisted in the military service of the United States was actually residing in the defendant town and so, by virtue of G. L. (Ter. Ed.) c. 116, § 1, Fifth, he had acquired a legal settlement in West Springfield, or whether at that time he had a settlement outside the Commonwealth. The judge found that he had no settlement within the Commonwealth, and accordingly found for the defendant in the first case and for the petitioner in the second case. The cases are here upon the plaintiff's appeal in the first case, and upon the appeal and exceptions of the Commonwealth in the second case.

It appeared from the agreed statement of facts with the accompanying documents that Sweeney was born in Keene,

New Hampshire; that he was assessed a poll tax there in 1914, 1915, 1916 and 1917; that he paid the first two years but the records of the collector showed he was absent during the last two years; that he was a member of the New Hampshire National Guard from 1914 to June, 1917, when he was discharged by reason of his enlistment in the military service of the United States; that in 1917 his mother resided in Keene, New Hampshire; that the records of the War Department showed that he enlisted at Boston in the army of the United States on June 28, 1917, giving his residence as 76 Island Street, Keene, New Hampshire, and served overseas until he was honorably discharged on May 2, 1919; that he was assessed poll taxes in West Springfield for the years 1916 and 1917 which were paid; that on May 20, 1919, he filed an application with the Treasurer and Receiver General of the Commonwealth for the benefits provided for World War veterans by St. 1917, c. 211, and, on November 17, 1919, made application for the payment provided by St. 1919, c. 283; that in both applications he stated that his residence at the time of his enlistment was 91 Church Street, West Springfield, where he had been assessed a poll tax for 1917, and in the earlier application he stated that he had resided in West Springfield for five years. Sweeney was unmarried and was employed as a brakeman by the Boston and Albany Railroad, and the address at 91 Church Street, West Springfield, given by him was the Y. M. C. A. which maintained a building in which it conducted a restaurant and a barber shop. This building also contained forty rooms, occupied principally by railroad employees who stopped over on their train runs between Boston and Albany.

The parties did not agree upon all the material facts and the statement of facts was merely an agreement as to what evidence should be submitted to the court, with the single exception that the town objected to the admission of evidence of its assessment of poll taxes to Sweeney for 1916 and 1917 and their payment. There is nothing in the statement of facts fixing the residence of Sweeney at the time of his enlistment, and the documentary evidence, which

was made a part of this statement, contains contradictory recitals as to his residence at the time in question. The parties were not in accord as to the place at which he was actually residing at the time of his enlistment. They simply agreed to offer certain evidence enumerated in the statement and leave the question to the decision of the court.

The proceeding against the Commonwealth, while in the form of a petition, as prescribed by G. L. (Ter. Ed.) c. 258, was in substance an action of contract. *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495. Therefore (if an appeal is proper in the present cases, *Frati* v. *Jannini*, 226 Mass. 430, which we do not decide) the scope of the appeal claimed in each case, both cases having been submitted on the same evidence, presents only the issue whether Sweeney had a settlement in West Springfield or outside the Commonwealth. This court on an appeal or exceptions in an action at law does not weigh or review evidence, but only decides if the ultimate finding can be supported by the evidence. Such a finding is not to be reversed unless the evidence with every reasonable inference of which it is susceptible is insufficient to warrant the finding. In other words, the finding is to stand if as matter of law it was permissible. *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164. *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426. *Jones* v. *Le May-Lieb Corp.* 301 Mass. 133.

The determination of a legal settlement is governed entirely by statutory provisions. *Dedham* v. *Milton*, 136 Mass. 424. *Treasurer & Receiver General* v. *Dedham*, 300 Mass. 238. The instant statute, G. L. (Ter. Ed.) c. 116, § 1, Fifth, in so far as material provides that "Any person who was inducted into the military or naval forces of the United States . . . or who enlisted in said forces in time of war between the United States and any foreign power . . . shall be deemed to have acquired a settlement in the place where he actually resided in this commonwealth at the time of his induction or enlistment." The

term "residence" appearing in our statutes has been construed as one of flexible meaning, depending upon the phraseology of the particular statute, the relation of the term to the remaining words employed, and the aim and object intended to be accomplished by the Legislature. *Stoughton* v. *Cambridge,* 165 Mass. 251.  *Martin* v. *Gardner,* 240 Mass. 350.  *Hanson* v. *Culton,* 269 Mass. 471.  *Avila* v. *DuPont,* 278 Mass. 83.  *Ness* v. *Commissioner of Corporations & Taxation,* 279 Mass. 369.  *Tuells* v. *Flint,* 283 Mass. 106.  *Doyle* v. *Goldberg,* 294 Mass. 105.  We need not pursue the subject further because the crucial words "actually resided" in the pertinent statute have been recently construed by this court.  "Residence imports something of expected permanence in way of personal presence.  It signifies intended continuance as distinguished from speedy change.  This natural meaning of the word is accentuated in the present statute by the immediately preceding word 'actually.'  The natural function of that word is to emphasize the dominant thought of the word or phrase with which it is coupled. . . . 'Actually resided,' therefore, means a real residence, a residence existing in truth." *Marlborough* v. *Lynn,* 275 Mass. 394, 397.  It ordinarily signifies more than mere physical presence in a place.  It depends upon the purpose for which one may have gone to a particular locality, and also upon his intention as to how long he contemplated staying, or upon what contingencies he expected to leave.  " 'Residence' means in general a personal presence at some place of abode with no present intention of definite and early removal and with a purpose to remain for an undetermined period, not infrequently but not necessarily combined with a design to stay permanently." *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 444.

In order to recover against the town, the plaintiff was required to prove that Sweeney at the time of his enlistment was actually residing in the town.  Other than evidence tending to show that he was assessed poll taxes for the years 1916 and 1917 as a resident at the Y. M. C. A., both of which were paid, the last one when he was over-

seas, and the recitals in his applications filed with the Treasurer and Receiver General in 1919 that he resided at 91 Church Street, West Springfield, at the time he enlisted, there was little evidence that he ever actually lived at this address, although it is probable that, on account of the nature of his employment as a brakeman, he secured temporary accommodations there, as did many of his fellow employees. It was not unusual for employees who were engaged upon train runs between Boston and Albany to stay at this establishment when periods between actual employment made it necessary or convenient for them to remain in West Springfield. The building was known as the railroad branch of the Y. M. C. A., and was apparently maintained for the benefit of those who were employed by the railroad and who frequented it in sufficient numbers to enable it to continue to serve their needs. There was no evidence that Sweeney's employment was principally in West Springfield or its vicinity. It was not shown that his work was usually connected with any particular freight yard or that he was ordinarily employed in making up trains at any terminal or in shifting operations conducted over a small area. He may have been regularly employed on interstate trains upon trips that began or terminated in West Springfield. There was no evidence by any official or employee at this branch of the Y. M. C. A. that Sweeney had ever resided there; no records were introduced to show the dates when he occupied a room there; nor was there evidence that he had ever been seen upon these premises. It was reasonable to infer that even if he did not stay at this branch for any considerable periods of time or with intent to make it his actual residence, it would furnish a convenient address for such railroad men as had occasion from time to time to visit this branch, especially when it was probable that the officials in charge were willing to favor railroad employees by accepting and holding their mail for them.

The records of the Boston and Albany Railroad show that he entered its employment at West Springfield as a brakeman on December 1, 1915, at which time he gave his ad-

dress as 76 Island Street, Keene, New Hampshire. He was not regularly employed by the railroad because, its records disclose, he was stationed on July 8, 1916, at Camp Spaulding, Concord, New Hampshire, and on July 23, 1916, he was in the army at Laredo, Texas. These records do not indicate any address in this Commonwealth until 1921, when he resided at Athol. They show that he resided during 1923 and 1924 at Hill Street, West Springfield, and that the first mention of an address at the Y. M. C. A. branch in West Springfield is for the year 1931. The records of the War Department show that he enlisted in an infantry regiment of the National Guard of New Hampshire on April 24, 1914, and that he was discharged on February 19, 1917, although the records of the Adjutant General of New Hampshire state that he was not discharged until June 22, 1917. Moreover, the defendant town expressly objected in the statement of facts to the admissibility of the record of the assessors of that town showing that Sweeney was assessed and that his poll tax was paid for the years 1916 and 1917. We assume the judge followed the law and did not consider such evidence, which was clearly inadmissible. The assessment of a poll tax was no evidence of his residence, in an action by another town. *Mead* v. *Boxborough,* 11 Cush. 362. *Burns* v. *Stuart,* 168 Mass. 19. *Jordan* v. *Carberry,* 185 Mass. 181. *Bay State Wholesale Drug Co.* v. *Whitman,* 280 Mass. 188.

The agreed statement of facts furnished sufficient basis to determine whether Sweeney at the time of his enlistment had acquired a settlement in West Springfield or whether his settlement was outside the Commonwealth, and this in turn depended, by virtue of the statute, G. L. (Ter. Ed.) c. 116, § 1, Fifth, on the place of his actual residence when he entered the army. The ultimate finding being supported by evidence is conclusive. *Rich* v. *Arancio,* 277 Mass. 310. *Bianco* v. *Ashley,* 284 Mass. 20. *Bratt* v. *Cox,* 290 Mass. 553. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207. *Worcester* v. *L. Rocheford & Son, Inc.* 300 Mass. 261. Since there was no error, we may affirm the order for judgment without considering whether appeal lies and whether the

more accurate rescript would be "appeal dismissed." There is no practical difference to the parties in these two courses. *Calligaris's Case*, 292 Mass. 397, and cases cited.

*Finding in each case affirmed.*

*Exceptions overruled.*