JAMES MILLAR COMPANY *vs.* COMMONWEALTH.

Plymouth.    December 5, 1924. — February 27, 1925.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Jurisdiction. Commonwealth. Eminent Domain. Damages,* For land taken or damaged by statutory authority. *Interest. Evidence,* Of value; Competency; Tax return; Admissions; Opinion: expert. *Witness. Corporation,* Officers and agents.

Spec. St. 1919, c. 187, granted jurisdiction for the maintenance against the Commonwealth of a petition for the assessment of damages suffered by one whose property was taken or damaged by the Pilgrim Tercentenary Commission under the provisions of that statute, if the petition was brought within two years after the taking and the aggregate amount in value of land and property taken did not exceed the unexpended balance of the amount appropriated by the General Court for the payment of lands and property to be acquired in the name of the Commonwealth.

It was proper to compute interest upon the amount assessed in such proceedings at the rate of six per cent.

At the trial of a petition under Spec. St. 1919, c. 187, § 6, for the assessment of damages caused by the taking by the Pilgrim Tercentenary Commission of coal wharf property on Plymouth Harbor, the owner of

land at Scituate, twenty-five miles distant from the land taken, called by the petitioner, was *held* improperly to have been permitted to testify as to the price for which, two to three years after the taking of the petitioner's property, he sold property of his in Scituate, where it appeared that the witness's property was nearly twice the size of the petitioner's property, and, while similar to it in that it had a coal yard with water privileges, was unlike it in that it had on it a hardware store, a building used as a post office and five or six lumber sheds used in the conduct of a lumber business, and where there was no evidence of similarity in the value of real estate in the two towns.

At the trial of the petition above described, it was *held* not to have been an improper exercise of discretion by the trial judge to admit evidence as to the cost of reproducing filled land which formed part of the land taken, where the judge carefully instructed the jury that they should not proceed under a misapprehension that the separate items of reproduction cost or even the market value of existing structures were to be considered separately in the assessment of damages, but that they were "to consider the thing as one indivisible whole . . . and determine, from all the evidence, the fair market value of the one indivisible whole, consisting of land and buildings, which the petitioner owned and which was taken by the Commonwealth."

Where the petitioner was a corporation, it was proper under St. 1923, c. 402, § 3, for the judge to exclude at the trial of the petition above described copies of its excise tax return for the year of the taking, signed and sworn to by its officer, and to prevent the destroying or minimizing of the secrecy thereof indirectly through the cross-examination of the officer of the corporation who signed the report.

It was not improper for the judge at the trial of the petition above described to permit a witness to answer a long hypothetical question as to the value of the property taken after the witness had testified that he was in the real estate business in Boston specializing in side track and water front privileges and had been so engaged for ten years, as a broker had bought and sold water front and railroad sites and commercial properties on the Mystic River in Boston, and had looked up property for people wanting coal wharves; that as far as he knew, there had been no transaction in Plymouth County on the water front involving the sale of coal wharf property other than that of the petitioner and of the Scituate witness who had testified as above described; that he had never bought or sold any water front property along the South Shore or made any investigation to familiarize himself with any special conditions governing the market value of water front property in that locality; that, as far as his own memory went as to the property of the petitioner, it was virtually a blank, and that he had never seen that property at all.

While the trial judge at the trial above described might properly have admitted evidence offered to prove that the president of the petitioner's corporation stated in 1917 "that the property was only a $30,000 investment," "investment" as used in the statement being found by the jury to mean "value," no reversible error was found in its exclusion.

PETITION, filed in the Superior Court on October 23, 1922, under Spec. St. 1919, c. 187, § 6, for the assessment of damages alleged to have resulted to the petitioner from the taking of property of his in Plymouth under that statute by the Pilgrim Tercentenary Commission on October 27, 1920.

In the Superior Court, the action was tried before *Broadhurst*, J.

One Henry S. Adams, a civil engineer of forty years experience, called by the petitioner, qualified as an expert on the cost of constructing filled wharves, and "testified that he knew nothing specific about the Millar coal wharf and had never been on it, but only knew about it in a general way by just going by it during the week or two he had spent in Plymouth every summer for over twenty years . . . that he had had a plan of the property laid before him, and had had the character of that property described to him as it was in 1920, with respect to the area, dimensions and elevations and the nature of the solid fill and pile wharf structures, and further, that his estimate upon these facts had nothing to do with getting water depth, nothing to do with dredging, but that with those dimensions before him he had computed the quantities in wood, stone, etc., necessary for the reproduction of that structure to the wharf surface, taking into consideration the prices prevailing for that kind of material in 1920." He then was asked: "And what did you find to be the cost of the reproduction of that structure to the wharf surface, not including buildings and coal pockets?" Against the objection of the respondent, the witness was permitted to answer, the judge stating to the jury that they were "not to consider what each thing cost to replace, but what the whole thing is, considered as one piece of real estate, as it stood in 1920, — and this evidence of reproduction cost, . . . is material, not as showing an independent element of damage which the plaintiff is entitled to recover, but it only has a bearing in so far as it may enable you to find the fair market value of the real estate that the petitioner was deprived of by the Commonwealth taking it from him on that date. . . . I don't want the jury to proceed under any misapprehension that these separate items of reproduction

cost or even the market value of existing structures, are to be considered separately from other structures. You are to consider the thing as one indivisible whole when you get through and determine from all the evidence, the fair market value of the one indivisible whole, consisting of land and buildings, which the petitioner owned and which was taken by the Commonwealth." The witness answered, $33,230.

One Charles E. Fitz,. called by the petitioner, testified that he was in the industrial real estate business in Boston, specializing in "side-track and water front properties"; that he had been engaged in this business for ten years, and in the course thereof had bought and sold, as a broker, water front and railroad site and commercial properties; that he had sold water front properties on the Mystic River in Boston, that he had looked up properties for people wanting coal wharves, and that for the last eight years he had had a branch office of the Metropolitan Coal Company and been engaged in selling coal on commission basis; that within two years he had had to do with endeavoring to put through a transaction in coal wharf property. As far as he knew there had been no transactions in Plymouth County on the water front involving the sale of coal wharf property other than the Millar property and Mr. Welch's. The witness further testified that he had never seen the Millar property in a business way, and did not remember that he had ever seen it at all. On cross-examination he testified that it was true that he had never bought or sold any water front property along the South Shore, nor made any investigation to familiarize himself with any special conditions governing the market value of properties in this locality; that as far as his own memory went of the Millar property it was virtually a blank. In answer to a hypothetical question, he stated that in his opinion the fair market value of the property at the time of the taking was $100,000. The respondent excepted to the evidence on the ground that the witness was not qualified to testify as an expert.

Other material evidence is described in the opinion. The jury found for the petitioner in the sum of $78,325, which

was $65,000 with interest at six per cent from the date of the taking.  The respondent alleged exceptions.

*C. F. Lovejoy,* Assistant Attorney General, (*A. P. Richards,* Assistant Attorney General, with him,) for the Commonwealth.

*E. F. McClennen,* (*A. E. Whittemore* with him,) for the petitioner.

PIERCE, J.   This is a petition for the assessment of damages caused by the taking of a coal wharf property on Plymouth Harbor, for the Commonwealth, by the Pilgrim Tercentenary Commission, on October 27, 1920, under Spec. St. 1919, c. 187.   A jury found for the petitioner, and the case is before this court on the suggestion of the respondent that the court was without jurisdiction, and upon its exceptions taken to the admission of testimony.

The contention that the court had no jurisdiction to entertain suit against the Commonwealth rests upon the indisputable rule of law that the Commonwealth cannot be impleaded in its own court without its consent.  *Lemon* v. *Commonwealth,* 236 Mass. 599, 600.

Material provisions of Spec. St. 1919, c. 187, read as follows:  Section 1.  "The Pilgrim tercentenary commission . . . is hereby authorized and directed to acquire in fee or otherwise, in the name and for the benefit of the Commonwealth, by purchase, gift, grant, devise or eminent domain . . . such lands, wharves and buildings . . . as were recommended to be acquired for said purpose by the report of the said commission, presented to the General Court in the year nineteen hundred and seventeen, and . . . such lands and buildings . . . as, in the opinion of the said commission, should be taken for the purpose aforesaid: provided, that the commission shall not acquire by purchase or right of eminent domain under this act any land or other property to an amount exceeding in value, in the aggregate, the total amount appropriated by the General Court or contributed by individuals, counties, other municipalities or corporations for that purpose."

Section 5.   "The commission shall, within sixty days after voting to take any lands, rights or easements, as aforesaid,

file and cause to be recorded in the registry of deeds for the county of Plymouth, a description thereof sufficiently specific for identification, with a statement of the purpose for which the same were taken, signed by a majority at least of the commission, the recording to operate as a taking of the real estate and rights and easements therein described."

Section 6. "The commission shall pay all damages to property sustained by any person, firm or corporation, by the taking of any land, buildings, rights or easements, or by any other thing done by the commission under this act. Any person, firm or corporation sustaining damages as aforesaid, and failing to agree with the commission as to the amount thereof, may have the same assessed and determined in the manner provided by law in the case of land taken for the laying out of highways, on application at any time within two years after the taking of such land or other property, or doing of any injury, under authority of this act, but no such application shall be made after the expiration of the said two years."

Section 10. "The commission may expend, subject to the approval of the Governor and Council, for any of the purposes named in this act, the sum of one hundred and fifty thousand dollars, being the amount appropriated in item five hundred and seven a of the general appropriation act for the current year, and may expend in addition thereto the sum of one hundred thousand dollars during the year beginning December first, nineteen hundred and nineteen. Any balance of said sums unexpended may be expended in the succeeding years, but it is the purpose and understanding of the General Court that the sum of two hundred and fifty thousand dollars is the sum total of all appropriations which the Commonwealth shall make for the purposes of this act."

We think the provisions in § 1, *supra*, directing the commission to acquire a fee in land taken in the name and for the benefit of the Commonwealth, read in connection with the limitation put upon that duty in §§ 1 and 10, *supra*, by implication authorized an action against the Commonwealth, by petition and jury trial, in any case where land was taken by eminent domain, if the petition was brought within two

years after the taking and the aggregate amount in value of land and property taken did not exceed the unexpended balance of the amount appropriated by the General Court for the payment of lands and property to be acquired in the name of the Commonwealth. *United States* v. *Great Falls Manuf. Co.* 112 U. S. 645, 656. *United States* v. *Lynah*, 188 U. S. 445, 464. *United States* v. *Cress*, 243 U. S. 316, 329. *United States* v. *North American Transportation & Trading Co.* 253 U. S. 330, 333. *Campbell* v. *United States*, 266 U. S. 368. There is nothing in the record to show that land and property were purchased or taken by the commission in value beyond the amount appropriated by the General Court.

Having regard to the provision that title is to be taken in the name of the Commonwealth, to the appropriations for the purchase and taking of such property, and to the provision for a petition for damages, § 6, we think the case at bar is distinguishable from the case of *Bent* v. *Emery*, 173 Mass. 495, upon which the respondent relies. We think G. L. c. 79, § 45, is not applicable where, as here, the land was taken before that statute went into effect, St. 1918, c. 257, § 187, St. 1920, c. 2, and that the rate of interest on the amount found by the jury was computed rightly at the rate of six per cent per annum.

The testimony of one Welch, that he sold his real estate in Scituate in 1923 for $100,000, was improperly admitted, and the exception of the respondent saved thereto must be sustained. The land sold was located in Scituate, twenty-five miles distant from Plymouth. No evidence was offered of similarity in the valuation of real estate in the two towns. The property sold was nearly twice the size of the property taken. It was similar in the fact that it had a coal wharf with water privileges. It was unlike in the fact that the land had a store on the property, which was used for the hardware business; that it had a building on it used as a post office; and that on it there were five or six lumber sheds used in the conduct of a lumber business. *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1. *Chandler* v. *Jamaica Pond Aqueduct Corp.* 122 Mass. 305, 307. *Fourth National Bank* of *Boston* v. *Commonwealth*, 212 Mass. 66. *Ham* v. *Salem*, 100

Mass. 350. *Benton* v. *Brookline,* 151 Mass. 250. *Klous* v. *Commonwealth,* 188 Mass. 149. There would seem to have been no insuperable difficulty in ascertaining the fair market value of the land taken in the year it was taken, in a town of the size of Plymouth, without resort to evidence of sales of land twenty-five miles away and at a time two to three years after the taking. So far as the admission of the evidence was a matter of discretion we think it was improperly exercised.

The evidence as to the cost of reproducing the filled land was within the discretion of the trial judge to admit or exclude, and we cannot say in the circumstances of this case that the discretion was improperly exercised. *Klous* v. *Commonwealth, supra. Lakeside Manuf. Co.* v. *Worcester,* 186 Mass. 552, 560.

The judge rightly excluded copies of the corporation excise tax returns for the year 1920, signed and sworn to by an officer of the petitioner, St. 1923, c. 402, § 3, *Brackett* v. *Commonwealth,* 223 Mass. 119, 126, and the secrecy of the return should not be destroyed or minimized indirectly through the cross-examination of the officer of the corporation who filed the report.

We cannot say that there was an abuse of discretion in the admission of the testimony of Charles E. Fitz, who was allowed to qualify as an expert in the values of water front properties, in view of the apparent difficulties attending proof of the value of the property in question. *Cochrane* v. *Commonwealth,* 175 Mass. 299, 302.

We think the judge could properly have admitted the evidence offered to prove that the president of the petitioner's corporation stated in 1917 "that the property was only a $30,000 investment," "investment" being found by the jury to mean as used "value"; but we do not find legal error in this regard.

*Exceptions sustained.*