LARRY T. GURLEY, Plaintiff and Appellant, *v.*
JOE BROWN, JOHN DOE, Defendants, GEORGE
SOUTHWORTH, SR., et al., Defendants and
Respondents.

No. 3509

May 21, 1948.                    193 P.2d 693.

*Brown & Wells* and *Gordon W. Rice,* all of Reno, for Appellant.

*H. R. Cooke,* of Reno, for Respondent Southworth.

*Emerson J. Wilson,* of Reno, for Respondents Penrose, Knox and Peterson.

*William S. Boyle,* of Reno, for Respondent Rogers.

*F. Kirby Unsworth* and *Sidney W. Robinson,* both of Reno, for Respondent Barrett.

## OPINION

By the Court, BADT, J.:

Are the individuals comprising the members of the city council of the city of Reno liable for damages as such individuals for failing to keep the temperature of the city jail above the freezing point and for failing to appoint a keeper for the jail whose duty it would be to perform such function, when such failure results in the freezing of a prisoner's feet, and when the individual members of the council are alleged to have known of the low temperature and to have acted "willfully, unlawfully, maliciously and negligently" in their said failure? Note that the inquiry is directed not to the liability of the municipality or of the city council as such, nor to the individual members as comprising such council, but to the members of the council as individuals.

The district court answered this query in the negative and, without opinion, sustained a general demurrer to plaintiff's complaint. Plaintiff elected to stand upon the complaint and not to amend, and suffered judgment to be entered in favor of the defendants for costs. From

such judgment the plaintiff appeals. From the complaint the following facts appear:

At the time of filing the complaint defendants Southworth, Penrose, Rogers, Knox and Peterson were members of the city council of Reno, Washoe County, Nevada. Defendant Nellie M. Barrett was the administratrix of the estate of William P. Barrett, deceased, a former councilman who had died subsequently to the acts complained of. Defendants Joe Brown and John Doe were the arresting officers who arrested and imprisoned the plaintiff. It is alleged that plaintiff was detained in a vile, loathsome cell, unheated, with the temperature below freezing point, and with drunken, diseased and unclean people, and was restrained of his liberty for three days and two nights; that the act of the legislature of the State of Nevada incorporating the Town of Reno and authorizing the establishment of a city government therefor and commonly referred to as the city charter (Stats. of Nevada, 1903, page 184, as amended; 1941 Compiled Charter and Ordinances, City of Reno, Vol. I, page 26) provides: "The city council, among other things, shall have power: * * * To provide and maintain a city prison, and provide for the guarding, safekeeping, care, feeding, and clothing of the city prisoners * * *"; that pursuant thereto the individual defendants "as the duly elected, qualified and acting city councilmen of the City of Reno" did provide such city prison, but willfully, unlawfully, maliciously and negligently failed and refused to appoint a keeper of said city prison or personally to provide for the safekeeping, care, feeding and clothing of the city prisoners on December 15, 16 and 17, 1945, failed to maintain the temperature above the freezing point and failed to provide a keeper who would see that plaintiff and other prisoners were properly fed and clothed and given medical attention; that defendants knew all of these conditions and knew that by reason of the negligent maintenance of the jail several city prisoners therein confined had died; that

plaintiff suffered frozen feet which required amputation of certain portions of several toes, and would require additional operations and hospital care and is permanently injured and disabled; that he suffered severe pain and anguish, was mortified, humiliated and shamed, etc., and was prevented from attending his lawful pursuits, to his damage in the sum of $50,000. Throughout the complaint it is repeatedly alleged that the acts of defendants were unlawful, malicious and negligent.

Plaintiff in his opening brief states: "It is to be remembered that we are not suing the City of Reno, nor are we suing the board as such, but we are endeavoring to hold the individual councilmen liable for their negligence." Plaintiff concedes that the statutory provisions for the construction and maintenance of a jail are permissive and not mandatory, but contends that "once the city council or their predecessors have provided and maintained a city prison, then it becomes incumbent upon them as a mandatory and clear and absolute duty to provide for the guarding, safe-keeping, care, feeding and clothing of the city prisoners." Plaintiff repeats in his reply brief: "It is to be remembered we are not suing the municipal corporation or the Board of City Council—but the individual councilmen for their personal negligence," and insists that once having erected the jail and undertaken to maintain it, the duty to provide for the prisoners therein "is a mandatory duty upon each city councilman to see that the care is proper and does not result in injury to the appellant." Again, in response to the assertion by respondents of the general rule that in erecting and maintaining a prison a municipal corporation is exercising a purely governmental function and is therefore not liable to a person imprisoned therein for injuries sustained by reason of its improper construction or negligent maintenance, appellant insists: "It must be kept in mind that in the case at bar we are not suing the municipal corporation, but the public officials on the theory of damages suffered

by the negligent acts of the officials in the performance and nonperformance of ministerial duties."

The respondents insist that if the municipality is relieved from liability, it would be inconsistent to hold the officers liable and that it would be an anomalous doctrine that would exempt the corporation on the grounds of its compulsory agency in behalf of the public welfare and at the same time affix liability upon its agents for precisely the same acts done under express authority, and cites authorities from other states in support of this view. They also insist that to "provide for the guarding, safe-keeping and care, feeding and clothing of the city prisoners" is a judicial or discretionary function, and that as no facts are alleged constituting willfullness, malice, or corruption, no liability arises to a person injured as the result of the exercise of such powers.

The situation is not free from difficulty. Statutory and charter provisions vary greatly, distinctions between governmental and corporate functions are sometimes loosely drawn, the transition from a discretionary function to a ministerial one is often far different from crossing the white line on the highway, the distinction between acts of misfeasance and nonfeasance appears often to be a matter of the point of view. Questions of notice, knowledge, malice, negligence, etc., inject themselves from important angles, and still other elements are found emphasized in the cases. These elements in turn are subject to further refinements of pleading, such as the pleading of notice or of knowledge or of malice etc., and these in turn are subject to further refinements, such as pleading the conclusions of the pleader in place of the actual facts to be supported by proof from which the conclusions may be drawn. It is therefore not surprising that we are confronted with a mass of conflicting decisions and that any attempt to reconcile them leads only to further confusion. Out of this maze of decisions, principles, rules, interpretations, distinctions

etc., there emerge, however, certain well-recognized, though not universally approved, principles of law.

■ The first of these, which appellant frankly concedes, is the immunity of the sovereign from suit. Rex non potest peccare. Even this has been decried. Angstman, J., in the concurring portion of his opinion in Coldwater v. State Highway Commission, Mont., 162 P.2d 772, 778, laments: "The rule is of long standing that the King can do no wrong. From that simple statement there grew up the further equally fallacious idea that a state or a nation can do no wrong and hence may not be sued without their consent." Conceding that the immunity of the state and its political subdivisions often results in injustice and leaves an injured person without right of redress, it is too strongly ingrafted in our jurisprudence to be questioned at this time, except in those cases in which the immunity is waived. The State of Nevada has never waived such immunity and appellant does not claim that the city of Reno has waived it.

■ The second rule, almost unanimously accepted, is that the erection and maintenance of a city prison by a municipal corporation are the exercise of a purely governmental function. The third rule necessarily follows, namely, that the municipality is not liable to a person imprisoned therein for injuries suffered by reason of its improper construction or negligent maintenance. See note in 46 A.L.R. 97, citing authorities from many states as well as from Canada and Australia. See, also, 43 C.J. 1168, Prisons and Workhouses, sec. 1933. Cases holding the jailer liable (such as Ratliff v. Stanley, 224 Ky. 819, 7 S.W.2d 230, 61 A.L.R. 566, relied on by appellant) are not in point.

■ The fourth proposition involves no difficulty in itself, namely, that the immunity from suit, unless expressly provided by the legislature, does not attach to a municipality in the performance of its corporate or proprietary functions. However, much of the confusion

above referred to grows out of cases in which the liability has been held to attach by reason of the negligent performance of such function (the most common cases being those of the negligent construction or maintenance of streets) in which the expressions used by the various courts have not in terms limited the holdings to such corporate acts. In this state in McDonough v. Mayor and Aldermen of Virginia City, 6 Nev. 90, whose abbreviated title is erroneously listed in the official reports as McDonough v. Virginia City, the liability of the municipality for negligently opening a street or for negligently repairing it (if it has exercised the permissive power granted by the charter to enter upon such repair) is definitely recognized. This was followed by Barnes v. City of Carson, 33 Nev. 1, 17, 110 P. 3, in which a judgment against the municipality was affirmed by this court. The same result followed in Pardini v. City of Reno, 50 Nev. 392, 263 P. 768, and in City of Las Vegas v. Schultz, 59 Nev. 1, 83 P.2d 1040.

■ Nor does the fifth principle enunciated afford any difficulty, namely, that although the authority to perform a corporate act be permissive and no liability attach if the municipality in the exercise of its discretion should conclude not to enter upon such performance, it will nevertheless be liable for its negligent performance of such corporate act once it enters upon the performance thereof. McDonough v. Virginia City, supra.

Appellant places his reliance on Doeg v. Cook, 126 Cal. 213, 58 P. 707, 77 Am.St.Rep. 171, from which he quotes extensively. There the defendant town marshal (who was ex officio road commissioner) and the individuals comprising the board of town trustees were charged with permitting a railing which guarded an open and dangerous culvert to be removed and with negligently failing to replace it, whereby the plaintiff fell into it on a dark night and was injured. Conceding that there was a conflict in authority, the California

court held the individual trustees liable because the performance or nonperformance of the act involved no question of discretion and because the duty was mandatory, plain, certain and ministerial, involving merely the execution of a set task. The case is distinguishable in several of its features but it fails as authority for the instant case mainly· because it assumes that the maintaining and repairing of the streets was a corporate duty, and because of the ministerial nature of the act or omission in question. We have seen that this court, in the cases cited above, has likewise considered the maintenance of streets a corporate function. The opinion in Doeg v. Cook did not discuss, or even consider, what the liability of the trustees might be if engaged in the performance of a governmental function. It is based largely upon a line of decisions in the State of New York dealing with the liability of the road officials for negligence in repairing and maintaining public highways, and in none of these cases does it appear that the official boards or the officials were acting on behalf of the municipality in any other than a corporate function. The opinion also relies upon the rule as stated in Shear. & R. Neg. (3d Ed.) sec. 156, reading as follows:

"The liability of a public officer to an individual for his negligent acts or omissions in the discharge of an official duty depends altogether upon the nature of the duty to which the neglect is alleged. Where his duty is absolute, certain, and imperative, involving merely the execution of a set task,—in other words, is simply ministerial,—he is liable in damages to any one specially injured either by his omitting to perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them,

where no corruption or malice can be imputed, and he keeps within the scope of his authority."

See, also, 25 Am.Jur. 641, Highways, sec. 348. For the same reason Dillwood v. Riecks, 42 Cal.App. 602, 184 P. 35, is not in point. The damage to the plaintiff there resulted from the negligent burning of the grass in a city park, whose maintenance was considered to be a private or corporate function of the city.

■ Article XII of the charter vests in the city council the legislative power of the city, defines the qualifications of the councilmen, the manner of their election, the legislative procedure for adoption of ordinances and then proceeds to define its powers, requiring for the purpose some 30-odd closely printed pages and including the section quoted above. Subdivision Eighth of section 10j also gives to the city council the power "To create any office that may be deemed necessary for the good government of the city and to employ or appoint, on its own motion, such person or persons as it may deem expedient or necessary in any department of the city, who shall thereupon be subject to the supervision and regulation of the department head thereof." Nowhere in the charter does it appear to be contemplated that the city council or its individual members should have personal supervision of the city prison. See Corliss v. Van Duzer, 132 Or. 265, 285 P. 253, 256. Indeed appellant relies most strongly not on any such individual duty but upon the alleged duty of the council to appoint a keeper for the city prison and upon the failure of the members of the council individually to make such appointment. It is asserted that this became their clear, imperative, ministerial duty upon their having entered into the exercise of their authority under the charter to maintain the city prison. Respondents, as noted, contend that the appointment of a keeper of the city prison, by ordinance, resolution or similar action, was a discretionary as distinguished from a ministerial act and

that no liability attaches for any mistake in judgment in the performance of such discretionary duties. See, 43 C.J. 713, Municipal Corporations, sec. 1194, and Id. sec. 1198. Exceptions are noted when the acts complained of are corrupt or in excess of authority or willful and malicious (Id.), but it is our opinion that the mere use of the terms of malice and willfullness scattered throughout the complaint do not show facts constituting such malice or willfullness so as to meet such exception to the rule. 49 C.J. 57, "Pleading," sec. 31, and cases cited in notes 3 and 4. Many authorities acknowledge frankly the difficulty in distinguishing between discretionary and administrative duties, and point out that the performance of almost any ministerial act can be said to include the exercise of some discretionary powers.

■ In view of appellant's emphasis of the fact that he is suing neither the city nor the city council nor the councilmen as such but is suing the members of the city council as individuals and in view of our conclusion that the maintenance of a city prison is a governmental function for whose negligent operation neither the municipality nor its governing board would be liable, at least in the absence of an allegation of facts constituting corruption or malice or other recognized exception to the rule, the only question before us for determination is whether such members of the city council are liable as individuals. It is the question posed in the opening sentence of this opinion. We are satisfied both by reason and authority that they are not so liable, first, because (having concluded that neither the statute nor any common law duty contemplated that the individuals personally attend to the heating of the jail, the care of the prisoners, etc.) the appointment of a keeper was a quasi-judicial or discretionary act and not a ministerial act and, secondly, because under the circumstances the immunity of the city from suit extended to the board of councilmen and the individual members could act only as such board.

In Coldwater v. State Highway Commission, Mont., 162 P.2d 772, the action was against the State Highway Commission for negligently maintaining a state highway whereby the plaintiff was injured. Judgment was also sought against the individual members of the commission and it was claimed, as in the instant case, that, having voluntarily assumed the obligation of maintaining the highway in question, it was their ministerial duty to keep it in a reasonable state of repair, to erect warning signs of the particular danger. The court said: "The questions presented are whether the complaint states facts sufficient to establsh the liability of the State Highway Commission, or the individual liability of the members of that commission." The commission was required by statute to formulate necessary rules and regulations for the construction, repair, maintenance and marking of state highways, and was authorized to operate a division of maintenance and was required to erect and maintain such standard guides and warning signs as appeared necessary. After holding that the carrying out of its duties by the commission was a discretionary matter, the court held definitely that the commission was the creation of an agency of the state for the accomplishment of governmental functions and was acting in a governmental capacity, and that the state's immunity from suit extended to the commission. The court then said: "The remaining question is whether the complaint states a cause of action against the individual members of the commission and their sureties * * * Under such circumstances, if the commission itself cannot be held liable, neither may the individual members thereof, in the absence of legislative sanction, no showing of actual willful or malicious negligence on their part being made." See the cases cited in the opinion and the reference to 40 C.J.S., Highways, sec. 251, P. 285, wherein it is said that statutory duties of county commissioners to keep highways in repair adhere to them in their official status and do not render them individually liable for breach

thereof. It should be noted that the dissenting opinion concurs as to the immunity of the commission, but dissents from the holding that the members are not individually liable.

In Moye v. McLawhorn, 208 N.C. 812, 182 S.E. 493, 495, the defendants were sued as county commissioners for their failure to perform their statutory duty to make rules and regulations for the protecting of prisoners confined in the county jail. Plaintiff had requested the arresting officer not to place the former in the jail with other prisoners as he knew of their practice to organize a kangaroo court and to inflict severe and cruel bodily punishment on newcomers. The defendant commissioners knew of such practice. Plaintiff was nonetheless imprisoned with the other prisoners and was seriously and permanently injured by them. The court held, first, that the defendants were not liable in their corporate capacity, and secondly, that the making of necessary rules to protect the prisoners was a discretionary power. Turning then to the question of individual liability of the defendants, the court says: "Nor will the action lie against the members of the board as individuals, because there is no averment that defendants acted or failed to act 'corruptly or of malice.' * * * In the instant case the defendants have no power, and therefore no duty, as individuals, to make rules and regulations prohibiting the organization by prisoners confined in the county jail of Pitt county of a Kangaroo Court. The power conferred by statute can be exercised by the defendants only in their corporate capacity, as the board of commissioners of Pitt county * * * The only question presented by this appeal is whether the defendants are liable to the plaintiffs as individuals on the facts alleged in the complaint. This question must be answered in the negative, and for that reason the judgment overruling the demurrer must be reversed. The demurrer should be sustained."

In Liming v. Holman, 160 A. 32, 33, 10 N.J.Misc. 582,

after holding that the negligent maintenance of a county jail, by reason whereof the plaintiff was injured, was a governmental function and that in the absence of statutory sanction no private action accrued to an individual suffering an injury through negligent operation, the court refused to pass upon the question as "to the improper designation of certain of the defendants as individuals rather than the corporate body sought to be involved by proper legal title * * *."

In Miller v. Ouray Electric Light & Power Co., 18 Colo.App. 131, 70 P. 447, plaintiff's minor son, while confined at the county jail, was suffocated by a fire that occurred there. Plaintiff sought to hold the county commissioners individually, alleging their failure to perform a statutory requirement to examine the jail and determine of its sufficiency and management. After holding that the duty was a public and governmental one, the court states that it knows of no authority to the effect that one or more of the county commissioners might be subjected to an action against him or them individually. To like effect is Monnier v. Goldbold, 116 La. 165, 40 So. 604, 607, 5 L.R.A.,N.S., 463, 7 Ann.Cas. 768, citing Hydraulic Press Brick Co. v. School District, 79 Mo.App. 665, and Bassett v. Fish, 75 N.Y. 303, where it is said that if there is any neglect to exercise the powers of the board "it is the neglect of the body, and not of the individuals composing it." Appellant has cited to us no case in point to the contrary.

As noted, we have also concluded that the demurrer was properly sustained because we are satisfied that the matter of appointing a keeper was discretionary in the city council. It is true that the complaint charges that the members of the city council had knowledge of the subfreezing temperatures and of the fact that there was no prison keeper or jailer and of the fact that several prisoners had died in the city prison. It cannot be said, however, that the duty of appointing a keeper left nothing to the discretion of the board. See 46 C. J. 1036,

Officers, sec. 303. The books are replete with cases involving the failure of boards and officers to perform sundry acts, which nonperformance resulted in damage to the plaintiff, but where the performance or nonperformance involved discretionary action, and no matter how unwise their judgment may have turned out, it was held that no liability attached. Appellant grants the general rule, but insists that the duty to employ a keeper was a plain, mandatory, ministerial duty. It is clear to us, however, that the adoption of an ordinance, resolution or order providing for an appointment of a keeper would be based first upon considerations of the necessity and propriety for such action. If it was decided that a keeper should be appointed, it would at once be obvious that he could not be on duty twenty-four hours a day. The question would then arise as to the necessity for the appointment of a day keeper and a night keeper or for the appointment of three keepers, each working an eight-hour shift. As plaintiff's chief complaint is the low temperature from which he suffered, the board of councilmen would have to consider whether the keeper's duties should include such janitorial services as tending the heating apparatus or such engineering service as maintaining the same in good condition and repair. Consideration would also have to be given as to whether the service in question was not being performed by the chief of police or other officers. While it is alleged that the defendants had knowledge that there was no keeper or jailer, it is obvious that some authority over the city prison and the prisoners must have been exercised by some officer or person. No officer or other person in charge of the city prison is named as a defendant herein. Questions as to feeding and clothing the prisoners are raised by plaintiff's reliance upon the charter provision referred to. Sanitary conditions are also called into question. All of these considerations impress upon us most strongly the conclusion that the matter of appointing or not appointing one or more keepers involved a

discretionary duty, and that the failure to appoint a keeper was at the most an error in the judgment or discretion of the board in the performance of a public function and for which no liability attached, in the absence of a sufficient showing of corruption or malice.

Appellant has quoted at great length from the opinion in Ham v. Los Angeles County, 46 Cal.App. 148, 189 P. 462. That case contains a valuable discussion under the headings of "Imperative Functions" and "Discretionary Functions," for which the bench and bar may feel indebted to Mr. Justice Sloan of the California District Court of Appeal. We find in that opinion, however, nothing contrary to the conclusions to which we have come. Ulvestad v. Dolphin, 152 Wash. 580, 278 P. 681, upon which appellant places reliance, is not in point. The action was brought against certain arresting officers, the police captain and the chief of police for false arrest, and is of no assistance here. The same may be said of Clark v. Kelly, 101 W.V. 650, 133 S.E. 365, 46 A.L.R. 799—the case being authority for the general rule of liability for the negligent performance of a ministerial duty under the circumstances recited.

Although not relied upon by appellant, the court has also given long and serious study to the case of Hale v. Johnston, 140 Tenn. 182, 203 S.W. 949, and the twelve or more later cases citing the same, including particularly Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12. In the former case the county commissioners permitted a condition to exist whereunder prisoners working in chain gangs were brutally beaten and abused. The situation was a notorious one of which the commissioners knew or by the exercise of ordinary care should have known. Plaintiff's intestate died as a result of such beatings. A statute required the county commissioners to see that inmates of the county workhouse were kindly and humanely treated. The Supreme Court of Tennessee considered that the performance of such duty was a ministerial act, and held it immaterial whether their

negligence was misfeasance or nonfeasance since they owed an active duty both to the public and to the inmates of the workhouse to see that the statutory mandate was carried out. It was said that their failure to perform a positive duty was a positive wrong. But the basis of the opinion, as we read it, was the failure of the commissioners to exercise ordinary care to see that plaintiff's intestate was kindly and humanely treated as required by the statute; that such ordinary care would have prevented the notorious corporal punishment that was a part of the system of discipline of the workhouse and that had been constantly practiced in the most brutal ways for many years; that this could have been readily accomplished by the removal of the bestial and homicidal guards; and that the commissioners could not cast off such duty by willful negligence. On the other hand, the case is often cited as authority for the rule as contained in the opinion that where a public official's [140 Tenn. 182, 203 S.W. 953] powers are discretionary, and to be asserted and withheld according to his judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority." In a number of later Tennessee cases the full import of Hale v. Johnston was not followed. In Johnson City Board of Education v. Ray, 154 Tenn. 179, 289 S.W. 502, 503, some eight years later, the Supreme Court of Tennessee held that the board of education as individuals were not liable for the injury to a student caused by the falling of a negligently attached ladder upon which she was exercising in the gymnasium. (The ladder was nailed to the girders with twenty penny nails instead of being fastened with bolts.) The court said:

"The Court of Appeals was of the opinion that the members of the board were charged with the duty of employing an experienced and competent inspector to inspect at reasonable intervals the gymnasium equipment and that, failing so to do, they were guilty of a

misfeasance, for which they were individually responsible to third persons for injuries resulting. In so holding we are of the opinion that the Court of Appeals committed error."

After quoting the statutory duty of the trustees to manage and control the school and to prescribe all necessary rules and regulations, etc., the court said:

"We have been referred to no statute or ordinance authorizing or enjoining upon the members of the board of education the employment of an inspector, as suggested above * * * The only act of negligence involved is that of [not] employing an inspector."

Recognizing Hale v. Johnston as authority for the rule that liability will result from omitting the performance of a duty that is absolute, certain, imperative and simply ministerial, the court, however, uses the following language, which is particularly applicable to the present case:

"The plaintiff saw fit to specify the act of negligence in her declaration upon which to fasten liability upon the individual members of the board, and the Court of Appeals held that the only act of negligence which was sustained was that charging them with failure to employ a competent inspector * * * But we are of the opinion that there is nothing in this record to show that said board was charged 'absolutely, certainly, and imperatively' with the employment of an inspector, and hence the injury here complained of cannot be charged to them."

We are tempted to discuss at some length the many other cases that have cited Hale v. Johnston, but it would unduly lengthen this opinion to do so. Reference must, however, be made to the case of Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12, in which the city manager and chief of police were held liable for the brutal beating and killing of plaintiff's intestate by certain subordinates whose debased character and brutality were known to the defendants. The plaintiff referred to a great many prior incidents, giving the precise dates

and the names of the prisoners assaulted by the subordinate officers. The recital of such prior beatings and maimings was astounding. The officers are continually referred to by the court as "killer-officers," and as "homicidal officers." The facts in the Hale-Johnston case were said by the court to be pertinently similar to the case before it. In both cases the responsible superiors continued to keep in office men of known cruel, brutal, debased, homicidal tendencies, although charged with complete knowledge thereof. The facts alleged in the instant case do not bring it within the principle of these cases. Here the plaintiff saw fit not only to omit joining as a defendant the chief of police, jailer, or other person in charge of the jail, but he saw fit not to base his cause of action on any negligence of the named defendants in failing to take steps to remove or otherwise discipline such officers or persons. Despite the allegation that the defendant councilmen not only failed and refused to appoint a keeper of said city prison but that they also failed and refused "to personally provide" for the safekeeping, care, feeding and clothing of the plaintiff, and also that they personally failed to maintain the temperature above freezing, it is clear from a careful reading of the complaint that it is bottomed squarely upon their failure to appoint a keeper. This, as we have held, is a discretionary act. The charter itself would seem to make it such by authorizing the city council (not the individual members thereof) to create any office "that may be deemed necessary for the good government of the city" and to employ or appoint such persons "as it may deem expedient or necessary in any department of the city." The creation of such offices and the employment of such persons do not, in our opinion, constitute such incidental discretionary action as may be involved in many ministerial acts. On the contrary the exercise of a real discretion seems to be indicated by the words used. The creation of an office and the determination whether such office is necessary and whether it is "necessary for the good govern-

ment of the city" all seem to involve duties which may be deemed legislative, quasi judicial and discretionary in the highest sense of those words. The right of the board to employ such person or persons "as it may deem expedient or necessary" would seem to confirm this view. The exercise of the discretion of the board was even widened by not limiting the appointment to those persons it deemed necessary but by permitting the appointment of persons it deemed expedient in any department of the city.

If in the exercise of such discretion the board had appointed a keeper but the same results had followed which are complained of by the plaintiff, could it nonetheless be the basis of a complaint that the board had been negligent in not appointing two keepers? One can readily see that this would lead to almost absurd conclusions, and which would violate the distinctions maintained by all of the authorities, without any exception so far as we know, between the rule as to liability for the performance of a discretionary act (without fraud or corruption) as distinguished from the performance of a ministerial act. It would eventually lead to the conclusion that despite the immunity of the governmental agencies redress may be had virtually in all cases against members of judicial and quasi judicial boards and officers personally.

Other points have been argued and other cases cited and discussed on both sides. These have been considered by the court but in view of the conclusions reached it becomes unnecessary to discuss them.. The judgment is affirmed with costs.

HORSEY, J., concurs.

EATHER, C. J., did not participate in the foregoing case.

ON PETITION FOR REHEARING

July 2, 1948.

*Per Curiam:*

Rehearing denied.