PATSY DELL HILL, A Minor, by JOHN HILL, Guardian Ad Litem, DELIA HILL and JOHN HILL, Appellants, *v.* WILLIAM HENRY THOMAS, ROBERT EMMET LYDON, and THE STATE OF NEVADA, Respondents.

No. 3781

April 30, 1954.                    270 P.2d 179.

*Springmeyer & Thompson,* of Reno, for Appellants.

*W. T. Mathews,* Attorney General, *Geo. P. Annand, Wm. N. Dunseath,* and *John W. Barrett,* Deputy Attorneys General, of Carson City, for Respondent State of Nevada.

*Wm. J. Crowell,* District Attorney, of Tonopah, for Respondents William Henry Thomas and Robert Emmet Lydon.

## OPINION

By the Court, EATHER, C. J.:

This case comes to this court on appeal from two orders entered by the First judicial district court on September 9, 1953, as follows:

(1) Sustaining the demurrer filed by defendant State of Nevada, without leave to amend, and dismissing the State of Nevada as a defendant;

(2) Ordering the venue and place of trial of the action to be transferred from the First judicial district court of the State of Nevada, in and for the county of Ormsby, to the Fifth judicial district court of the State of Nevada, in and for the county of Nye.

There is no dispute as to the issues presented in the district court. The material parts of the complaint

which we consider necessary to a determination of the case are as follows:

The action was commenced December 11, 1952. The complaint seeks damages against William Henry Thomas, sheriff of Nye County, and Robert Emmet Lydon, deputy sheriff of Nye County, and constable of Tonopah Township, and the State of Nevada as surety on the official bonds of said officers. The causes of action arise out of the discharge of a shotgun by defendant Lydon, while acting in his official capacity as a peace officer in maintaining a road block south of Tonopah, Nevada, on August 17, 1952. It alleges that plaintiffs were wounded and otherwise suffered damages as a result of a discharge of a shotgun at and towards plaintiffs' automobile and the occupants thereof, damaging said automobile and wounding plaintiff's wife, Delia Hill, and plaintiff's daughter, Patsy Dell Hill; that as a direct and proximate consequence of defendant's conduct, as aforesaid, plaintiff John Hill suffered severe and continuing anguish and distress and incurred expenses for the repair of his automobile, and incurred expenses for the hospitalization, care and treatment of his wife and daughter, and for other losses.

The State of Nevada, joined as a party defendant in the district court, demurred to the complaint upon the following grounds:

(1) That the complaint did not state facts sufficient to constitute a cause of action against the defendant state in either cause of action therein alleged.

(2) That the court had no jurisdiction of the defendant state.

(3) That there was a misjoinder of the State of Nevada as party defendant.

The contention of the state in support of its demurrer was, briefly, that the court had no jurisdiction of the state in the action for the reason that the state had not consented to be sued in the manner and form set forth in the complaint, even though it was surety upon the

bonds of the sheriff and deputy sheriff of Nye County and the constable of Tonopah Township under the provisions of the state bond trust fund act.

This demurrer was sustained by the lower court. The judge in a written decision discloses that his reason was twofold: (1) That the official bonds of defendant officers written by the State of Nevada as surety, are limited to indemnify against losses through defalcation, misappropriation of public funds and matters of related character; (2) that the state, as sovereign, not having consented to be sued, is not amenable to suit in this action.

The appellants appealed from the order and decision of the lower court wherein it dismissed the state as a party defendant, and have alleged two grounds in their opening brief, alleging the following errors: (1) The trial court erred in sustaining the demurrer filed by the State of Nevada to plaintiffs' complaint and (2) the legislature has expressly consented to suit against the State of Nevada as surety on all official bonds.

Appellants contend that the liability of the State of Nevada as surety on official bonds is coextensive with that of a private surety on such bonds.

Nevada law requires a sheriff, before entering upon the discharge of his duties to give a bond "conditioned for the faithful performance of the duties of his office." (N.C.L. 2145, 1931–1941 Supp.) A similar bond is required of a constable. (N.C.L. 8475, 1929, Vol. 4.)

The condition of the bond of respondent Thomas is:

"Now THEREFORE, If the said WILLIAM HENRY THOMAS shall faithfully perform and discharge the duties of his office of SHERIFF and render a true account of all moneys, accounts and property of any kind that shall come into his hands as such officer during the period beginning 1st Monday in January, 1951, and ending 1st Monday in January, 1955, and pay over and deliver the same according to law, then the above obligation shall be null and void, otherwise to be in full force and effect, and payment of any loss by the surety shall be made out of the State Bond Trust Fund.

"This bond is provided by the State of Nevada pursuant to Chapter 193, Statutes of Nevada 1937, as amended by Chapter 128, Statutes of Nevada 1943, and all the terms, conditions and provisions of said chapters shall be deemed to be incorporated in and made a part of said bond as fully as if set forth in full herein, and the State of Nevada is surety hereon upon the express condition that, as such surety, it shall also be liable under the provisions hereof for the loss of any public or other funds that may be covered by this bond, occurring through or resulting from misappropriation and/or defalcation in breach of trust and/or misconduct; provided, this bond shall not apply to losses resulting from acts of God or nature, fire, burglary, holdup, and/or other cause over which the said principal exercised no control or influence and was free from participation therein, and said principal · exercised reasonable diligence in safeguarding the funds and securities committed to and in his (or her) care and custody."

Attached as Exhibit "B" to plaintiffs' complaint is a similar bond executed by Robert Emmet Lydon, constable of Tonopah Township, county of Nye, State of Nevada, as principal, and the State of Nevada as surety.

Further the law expressly renders the sheriff liable for the acts of his deputies. Sec. 2146, N.C.L.1929 provides: "* * * and the sheriff shall be responsible for all the acts of his deputy or deputies, and may remove such deputy or deputies at pleasure * * *." And, an "Act authorizing ministerial officers to appoint deputies," Sec. 4848–50, N.C.L. 1929, particularly 4849, provides:

"Said officers shall be responsible for the compensation of said deputies, and shall be responsible on their official bonds for all official malfeasance or nonfeasance of the same. Bonds for the faithful performance of their official duties may be required of said deputies by said principals."

The matter before this court and with which we are here concerned is the bond trust fund act of 1937 (N.C. L. 4915.21 et seq. 1931–1941 Supp.), which, together

with its predecessor acts commencing in 1933, placed the State of Nevada in the bonding business insofar as the surety bonds of public officials are concerned. An interpretation of the bond trust fund act is essential to a decision in this case because of the conclusion reached by the trial court that the function of the act, and bonds written thereunder, is to safeguard the state and political subdivisions "in financial matters only," that is to say, losses arising through embezzlements, defalcations and the like. In the case now before this court, plaintiffs seek to enforce liability on the bonds by reason of the tortious misconduct and malfeasance of the bonded officers. The statute is entitled "An Act to provide against losses to the state and its respective counties, townships, incorporated cities and irrigation districts through defalcation, misappropriation of funds or other wrongful acts on the part of officials; to provide for the issuance of surety bonds for state, county, township, city and irrigation district officials, establishing a fund therefor, and other matters relating thereto; and to repeal all acts and parts of acts in conflict therewith."

Section 1, N.C.L.1931–1941 Supp., 4915.21, described the purpose of the fund as to secure against loss through "defalcation, misappropriation of public funds or other wrongful acts of state or county officials." Section 3 of the act, N.C.L. 4915.23, requires all public officials who are required by law to furnish bond to apply for a bond to the state board of examiners, and provides: "This bond shall have full force and effect as a surety and shall serve all purposes of bonds required by statutes from state or county officials * * *." Section 8 of the act, N.C.L. 4915.28, states: "Surety bonds issued under the provisions of this act shall be understood to be conditioned to faithful performance of duty, and to assurance against losses through misappropriation or defalcation in breach of trust or misconduct."

In view of the foregoing provisions can it be fairly concluded that only financial losses arising through

embezzlements and similar wrongdoings are intended to be indemnified by the bonds?

In its answering brief the State of Nevada does not dispute appellants' contention that the acts complained of, as alleged in the complaint, would have constituted breaches of the conditions of the official bonds given by the sheriff and his deputy and would have subjected the surety on such bonds to liability to appellants if the bonds had been written by a private surety company. The whole of the brief of the State of Nevada is devoted to the contentions that the state bond trust fund act should be construed to limit the liability of the bond trust fund to misappropriations, defalcations and embezzlements of public funds by public officers, and that the State of Nevada has not waived its immunity.

We are of the opinion that if a bond written by a private surety conditioned for the faithful performance of the duties of a peace officer would be liable under the circumstances related in plaintiffs' complaint, then the State of Nevada is similarly liable as surety on bonds written under the bond trust fund act of 1937. Otherwise, we feel, such bonds would fail to "serve all purposes of bonds required by statute." To hold otherwise would be to assume an intent on the part of the legislature (contrary to the language of sec. 4915.23) to provide a state bond which does not afford the same degree of surety coverage as other types of surety bonds. The responsibility of the State of Nevada as surety for the sheriff and constable, the officers involved in the case before this court, must be upheld for it is the sponsor of the integrity of an officer while acting as such. The state may not be absolved from liability upon the theory that it is responsible only for losses through defalcation, misappropriation of public funds and matters of related character, and not for liability for the very type of tortious action which constitutes one of the logical contingencies for which a sheriff, constable or deputy sheriff

should be required to be bonded in the performance of his official duties.

In support of our determination that a bond conditioned for the faithful performance of the duties of the officer covers tortious misconduct of the officer in the performance of his official duties, we cite the case of State of Indiana ex rel. Penrod v. French, 222 Ind. 145, 51 N.E.2d 858, 149 A.L.R. 1084, and the cases cited therein.

To a proper understanding of the Nevada statute which emphasized the parallel existing between the instant case and the points discussed by the Indiana Supreme Court we quote the act of the legislature of Nevada approved March 14, 1865, in part as follows:

"An Act Concerning Official Bonds.

"Sec. 4890, N.C.L.1929. Sec. 1. All official bonds required by law of officers shall be in form joint and several, and made payable to the State of Nevada, in such penal sum, and with such conditions, as may be required by law.

"Sec. 4891. Sec. 2. Every official bond executed by any officer pursuant to law shall be deemed and taken to be in force, and shall be obligatory upon the principal and sureties therein, for any and all breach of the condition or conditions thereof, committed during the time such officer shall continue to discharge any of the duties of, or hold such office; and every such bond shall be deemed to be in force and obligatory upon the principal and sureties therein, for the faithful discharge of all duties which may be required of such officer by any law enacted subsequently to the execution of such bond, and such condition shall be expressed therein.

"Sec. 4892. Sec. 3. Every official bond executed by any officer pursuant to law, shall be in force and obligatory upon the principal and sureties therein, to and for the State of Nevada, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity, and any person so injured or aggrieved may

bring suit on such bond, in his or her own name, without an assignment thereof."

## "Duties of Sheriff and Deputy

"Sec. 2148, N.C.L.1929, Sec. 5. It shall be the duty of sheriffs and of their deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots, and insurrections, for which purpose and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony, or breach of the peace, they may call upon the power of their county to aid in such arrest, or in preserving the peace.

## "Duties of Constable and Sheriff.

"Sec. 2192, N.C.L.1929. Sec. 6. Each constable shall be a peace officer in his township, and shall serve all mesne and final process issued by a justice of the peace, and shall discharge such other duties as are or may be prescribed by law; *provided,* that in case a sheriff or his deputy in any county in this state shall make an arrest of any person or persons charged with a criminal offense or arrested in the commission of an offense, the sheriff or his deputy shall have the privilege, and it shall be his duty to serve all process, whether mesne or final, and attend the court executing the order thereof, in the prosecution of the person or persons so arrested whether in a justice or a district court, to a final conclusion, and whether the same be an offense of which a justice of the peace has jurisdiction, or whether the same be a preliminary examination or hearing; and the said sheriff or his deputy shall receive the same fees and in the same manner therefor as the constable of the township, in which such justice court is held, would receive for like service.

## "Peace Officers.

"Sec. 10735, N.C.L.1929, Sec. 87. Peace officers are the bailiff of the supreme court, sheriffs of counties,

constables, members of the state police, state detective, marshals, and policemen of cities and towns respectively.

"Sec. 10736. Sec. 88. If a warrant be issued by a justice of the supreme court, or district judge, it may be directed generally to any or all peace officers designated in the preceding section, and may be executed in any part of the state by any of those officers to whom it may be delivered.

"Sec. 10737. Sec. 89. If a warrant is issued by any other magistrate, it may be directed generally to any sheriff, constable, marshal, policeman, or other peace officer in the county in which it is issued, and may be executed by such officer in any part of the state, or if defendant be in another county it may be executed by any peace officer in the state."

The second point made by the trial court in reaching the conclusion that the demurrer of the State of Nevada should be sustained and the state dismissed as a party defendant, is that the state, as sovereign, is immune from suit, and that, in this instance, such immunity had not been waived.

Article IV, section 22, Constitution of Nevada, provides:

"Provision may be made by general law for bringing suit against the state as to all liabilities originating after the adoption of this constitution."

The legislature of this state, as far back as 1869, and pursuant to this constitutional provision, provided a statute whereby suits might be brought against the State, which statute is now section 9200, N.C.L.1929, reading as follows:

"An officer or person who has presented a claim against the state for services or advances authorized by law, and for which an appropriation has been made, but of which the amount has not been fixed by law, to the board of examiners, which claim said board or the state controller has refused to audit and allow, in whole or in part, may commence an action in any court in Ormsby County having jurisdiction of the amount, for

the recovery of such portion of the claim as shall have been rejected. In such action the State of Nevada shall be named as defendant, and the summons shall be served upon the state controller, and the action shall proceed as other civil actions to final judgment."

Respondents contend that the foregoing statute affords plaintiffs their only remedy.

It would appear that the above section is of no assistance here, however, as the claims there provided for are "claims for services or advances authorized by law, and for which an appropriation has been made." The instant case deals only with the obligation of the State of Nevada as surety on the official bonds of the sheriff and constable of Nye County, Nevada.

We are of the opinion that the legislature of the State of Nevada, by express statute, has given consent to suit against it on official bonds. Prior to the adoption of the bond trust fund act of 1937, N.C.L.1931–1941 Supp., sections 4915.21–4915.34, and similar statutes preceding it, all official bonds were written with individual sureties or corporate sureties. Since 1865, there has been and still is in effect an act concerning official bonds, N.C.L. 1929, sections 4890–4901, which specifies the form, obligation and other matters relating to all official bonds in this state. The third section of the act concerning official bonds, N.C.L.1929, sec. 4892 has been quoted above. It expressly grants to any person injured or aggrieved by the wrongful act or default of an officer, a right of action on the official bond of such officer and against the surety or sureties thereon. Consequently, in any instance where an official bond was written by private sureties, a person injured or aggrieved by the wrongful act or default of the officer might have sued on the bond itself.

By virtue of the bond trust fund act of 1937, the State of Nevada has become surety on all official bonds in this state. At the time of the adoption of the act, the legislature had full knowledge of the act concerning official

bonds, which had been in effect since 1865, and obligated the State of Nevada as surety on official bonds in accordance with the provisions of the act relating to official bonds.

In our opinion the state thereby undertook to permit any person injured or aggrieved by the wrongful act or default of an officer to bring an action against it directly on the bond, and thereby consented to suit against it on such bond, waiving its sovereign immunity therefrom. The bond constituted a contract between respondent Thomas, as sheriff, and Lydon as constable and the State of Nevada as surety for the benefit of any one who might suffer damages by reason of his failure to faithfully discharge his duties as such officer.

The state has suggested in its brief that section 7 of the state bond trust fund act, being sec. 4915.27, 1931–1941 N.C.L. Supp., sets up a complete procedure for making claims on official bonds and thereby impliedly repeals the act concerning official bonds, and particularly section 4892, N.C.L.1929. However, a careful reading of section 7 discloses that it provides a special proceeding in only a limited number of cases, that is, losses to counties, cities, the state and irrigation districts resulting from defalcations, misappropriations or other wrongful act on the part of a public official. The procedure does not cover cases where the misconduct of the principal has caused injury to third persons protected by section 4892, supra. It should not be said, however, that failure to provide a specific procedure results in depriving such person of his right to recover. The procedure theretofore existing was resort to the courts by an action at law. Failure of the bond trust fund act to indicate any other procedure and the implication that the state as surety has assumed the responsibility in such cases, would indicate that that procedure remains available and constitutes an implied consent by the state to suit and a waiver of its immunity. Section

3 of the state bond trust fund act, being sec. 4915.23, supra, specifically states that "This bond shall have full force and effect as a surety and shall serve all purposes of bonds required by statute from state or county officials." The bond itself is conditioned as follows: "If the said William Henry Thomas shall faithfully perform and discharge the duties of the office of sheriff * * *."

Such bond was required of the sheriff before he could qualify under the provisions of sec. 2145, N.C.L.1929, as amended, and covers not only the wrongful act or default of the sheriff himself, but also the wrongful act or default of any of his deputies. Sec. 2146 and sec. 4892, N.C.L. 1929.

The case of Gurley v. Brown, 65 Nev. 245, 193 P.2d 693, cited by respondent State of Nevada and by the district court in its decision, is not authority to the contrary. In that case there was no semblance of a legislative waiver of sovereign immunity. In that case, 65 Nev., on page 250, 193 P.2d, 695, the court stated in part:

"Conceding that the immunity of the state and its political subdivisions often results in injustice and leaves an injured person without right of redress, it is too strongly ingrafted in our jurisprudence to be questioned at this time *except in those cases in which the immunity is waived.*"

The case stands only for the conceded proposition that the sovereign is immune from suit in the absence of a waiver of immunity.

The law is well settled that a state, which in the eye of the law is recognized as a sovereign, cannot without its consent be sued by a citizen. However, there are numerous instances where a waiver of immunity has been found in order to give full and reasonable effect to the legislative enactments under consideration. It cannot be said that the authorities require as a basis for

finding of waiver of immunity that the statutes should expressly and implicitly declare such a waiver and set up a complete procedure for the commencement and maintenance of the action consented to. The principal authorities found supporting a waiver of sovereign immunity under legislation no more detailed than that with which we are here concerned are as follows: Saranac Land & Timber Co. v. Roberts, 68 Fed. 521; People v. Durey, 126 Misc. 642, 214 N.Y.S. 418.

In the case of Anderson v. John L. Hayes Const. Co., 243 N.Y. 140; 153 N.E. 28, Justice Cardozo, writing for the New York Court of Appeals in considering mechanics lien statutes granting liens to materialmen and subcontractors against money due from the state to the general contractor, and permitting the state to be joined as a defendant, after the appellate division had held that there must be a concession of money due from the state to the general contractor before the waiver of immunity was effective, said:

"We find no basis in the statute for this division of judicial functions. The state has consented to be sued in the ordinary courts of justice, when the subject-matter of the controversy is a lien upon money owing to its contractor, and has consented that, out of any money that may be found to be so owing, judgment may be rendered, directing payment to be made. In consent so explicit, we see no suggestion of a condition that the remedy is to fail if the debt shall be disputed. Justice and convenience combine with the plain wording of the statute in forbidding us to imply a condition so oppressive. No sensible reason can be imagined why the state, having consented to be sued, should thus paralyze the remedy. A court of dignity and power had the parties before it, and had heard the controversy between them. To transfer the controversy to the Court of Claims could work no gain to any interest worthy of protection. Indeed, the special limitations applicable to claims in that court (Court of Claims Act (Law 1920.c.922) sec 12) might often bring it to

pass that the claim would be barred before the transfer could be made. *The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.*" (Emphasis supplied.)

See also: Hall v. First National Bank, Tex. Court of Civ. App., 252 S.W. 828; Hollister v. State, 9 Idaho 8, 71 P. 541; Amstein v. Gardner, 134 Mass. 4; Haley v. Sheriden, 190 N.Y. 331, 83 N.E. 296; James Millar Co. v. Commonwealth, 251 Mass. 457, 146 N.E. 677 and cases cited therein.

In the case of Warren Bros. Co. v. Kibbe, Dist. Court D, Oregon, 43 Fed.2d pages 583–584, the court said:

"Motions to dismiss and to transfer to the law side of the court and for a further definite and specific statement have been filed. On behalf of the commission it is contended that the suit cannot be maintained against it because it is in effect a suit against the state, which is prohibited by the Eleventh Amendment to the Constitution of the United States.

"There are almost innumerable decisions to be found in the books on this question, and authorities can be found supporting either view. It would be useless, if not impossible, to reconcile the authorities, and I do not attempt to do so. It is enough that in my opinion the great weight of authority as well as reason supports the rule that an action or suit may be maintained against a state agency to compel it to perform a plain official duty which the law imposes upon it, and a contract which it has entered into in pursuance of the law."

In the light of the foregoing authorities and the cited enactments of the Nevada legislature, the only conclusion which we can reach is that the state has waived its immunity from suit in cases of this character.

Article V, section 21 of the Constitution of Nevada, provides in part that no claims against the state shall be passed upon by the legislature without having been

considered and acted upon by the state board of examiners. This same point was asserted at the time the Nevada industrial insurance act was adopted by the legislature. In the case of State v. McMillan, 36 Nev. 383, 136 P. 108, it was held that no presentation of a claim to the state board of examiners was required. The case involved the interpretation of a statute creating a special fund for the administration of the industrial insurance act, the provisions of the statute being quite similar to those of the state bond trust fund act.

We think it a fair interpretation of the bond trust fund act and the sections thereof relating to the procedure for making claims thereunder, that such procedure is limited to a narrow class of cases involving embezzlements, defalcations and misappropriations of public funds by public officials. In such instances, the procedure for filing claims prescribed by the act would be normal and proper, for it would not be anticipated that the counties, municipalities or irrigation districts suffering the loss would be required to bring an action in a court of law to impress its claim against the fund. However, while so prescribing such procedure in a limited type of case, we are of the opinion that the legislature made it crystal clear that it did not intend to change the surety's liability on official bonds or to restrict the conditions of such bonds, but intended official bonds written by the State of Nevada as surety to serve all purposes of official bonds required by the laws of this state. If a waiver of immunity cannot be implied from these circumstances, the appellants will be left remediless. Such a conclusion will place the state in the position of having deliberately entered into a business normally carried on by private individuals rather than governmental agencies, knowing that the contractual obligations undertaken by it as surety under the bond trust fund act of 1937, were not what they purported to be, but were rather mere empty words assuring no one of the protection against the

wrongful acts of public officials who frequently are unable personally to respond in damages to the injured persons.

We conclude that the legislature had knowledge of the existence of the statute relating to the official bonds under which suit directly against the surety on the bond is authorized, and enacted the bond trust fund act of 1937 with the intention of subjecting the state and the bond trust fund established to the same obligations as surety as had theretofore been imposed upon private sureties.

Appellants also appeal from the order of the trial court transferring venue to the Fifth judicial district court for the county of Nye. This order was clearly entered in consideration of the court's action dismissing the state as defendant. Respondents Thomas and Lydon, on whose motion the change of venue was granted, concede that should the state be held a proper party, they were not entitled to such change. Such is our view.

The decision and orders of the district court appealed from are reversed, and the matter remanded for further proceedings.

MERRILL and BADT, JJ., concur.